MASTERCLEAN OF NORTH CAROLINA, INC. v. JOHN GUY

No. 8621DC131

(Filed 15 July 1986)

**1. Appeal and Error § 6.2— preliminary injunction—right of appeal**

A preliminary injunction restraining defendant from competing with his former employer in five states deprived defendant of a substantial right and is thus immediately appealable.

**2. Contracts § 7.1; Master and Servant § 11.1— covenant not to compete—unreasonable as to territory**

Provisions in a contract of employment with an asbestos abatement contractor that after termination of the employment, the employee would not engage in business or work for another in competition with the employer in any city or town in the United States in which the employer is doing or has signified its intention of doing business are patently unreasonable as to territory, and the trial court had no authority to vary or reform the contract by reducing the territory to five states.

**3. Master and Servant § 11— former employee—enjoining from working for competitor—insufficient evidence**

Plaintiff failed to show a reasonable apprehension of irreparable injury unless an injunction were granted restraining defendant, a former employee of plaintiff asbestos abatement contractor, from working for a competitor where plaintiff's president testified that plaintiff terminated defendant's employment; the vast majority of defendant's work was the actual removal of asbestos and only a small percentage of defendant's time was spent in customer contacts; plaintiff's operating and safety procedures were unique but not secret; competitors visit each other's job sites and could observe many of the procedures used by plaintiff; plaintiff used procedures suggested by manuals pertaining to asbestos removal; and companies in the business of asbestos removal basically *used the same type of equipment.*

APPEAL by defendant from *Gatto, Judge.* Judgment entered 5 December 1985 in District Court, FORSYTH County. Heard in the Court of Appeals 5 June 1986.

On 11 May 1982, plaintiff Masterclean of North Carolina, Inc., employed defendant John Guy, as a laborer. Plaintiff is a corporation with its principal place of business in Forsyth County, North Carolina. Since 1979, plaintiff has been engaged in the business of asbestos abatement, containment and removal. When plaintiff employed defendant, the parties entered into an employment agreement with a covenant not to compete and a covenant not to disclose confidential information and trade secrets. The pertinent restrictions of the covenant not to compete were as follows:

NOW, THEREFORE, for and in consideration of this initial employment, and the compensation to be earned and paid to the employee hereunder, said employee covenants and agrees that he will not during the term of this employment, and for a period of five whole years thereafter, engage directly or indirectly for himself or as agent, representative or employee of others in the same kind or similar business as that engaged in by the company (1) in Forsyth County, North Carolina, or (2) in any other city, town, borough, township, village or other place in the State ·of North Carolina, in which the Company is then engaged in rendering its said service, (3) in any city, town, borough, township, village or other place in the United States in which the company is then engaged in rendering its said service, or (4) in any city, town, borough, township or village in the United States in which the Company has been or has signified its intentions to be engaged in rendering its said service.

In October 1985, plaintiff terminated defendant's employment. Defendant held the position of project manager when his employment with plaintiff was terminated. On 1 November 1985, defendant was employed by HEPACO, an asbestos abatement contractor located in Charlotte, North Carolina. Defendant worked on one asbestos cleaning contract for HEPACO. On 8 November 1985, plaintiff filed its complaint and motion for a preliminary injunction against defendant. Plaintiff averred, *inter alia*, that it was entitled to a preliminary injunction and permanent injunction issued to defendant specifically enforcing the express terms of the parties' agreement and prohibiting defendant from using the skill, education and experience acquired through employment by plaintiff for the benefit of himself or another. A hearing was held upon plaintiff's motion on 2 December 1985. On 5 December 1985, the court entered an order granting plaintiff's motion for a preliminary injunction. Defendant was enjoined for one year or until trial from competing with plaintiff through the use of knowledge acquired during his employment with plaintiff. The court specifically restrained defendant from any employment on projects that are bid or negotiated between plaintiff and defendant's present employer or successor employer within North Carolina, South Carolina, Virginia, Georgia, and Alabama. Defendant appeals.

*Molitoris & Connolly, by Anne Connolly and Theodore M. Molitoris, for plaintiff appellee.*

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Marion G. Follin, III, for defendant appellant.*

JOHNSON, Judge.

[1]  Our first line of inquiry is whether the preliminary injunction entered by the trial court against defendant deprives defendant of a substantial right which he would lose absent a review prior to a final determination on the merits of this case. In *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 302 S.E. 2d 754 (1983), the Supreme Court of North Carolina stated the following:

> A preliminary injunction is interlocutory in nature, issued after notice and hearing, which restrains a party pending final determination on the merits. Pursuant to G.S. 1-277 and G.S. 7A-27, no appeal lies to an appellate court from an interlocutory order or ruling of a trial judge unless such order or ruling deprives the appellant of a substantial right which he would lose absent a review prior to final determination.

*McClure*, at 400, 302 S.E. 2d at 759 (citations omitted). We hold that defendant would be deprived of a substantial right, absent a review prior to a final determination, to wit: the right to work and earn a living in the states of North Carolina, South Carolina, Virginia, Georgia, and Alabama. *See generally Robins R. Weill Inc. v. Mason*, 70 N.C. App. 537, 320 S.E. 2d 693, *cert. denied*, 312 N.C. 495, 322 S.E. 2d 559 (1984). Testimony established that there are only two prospective employers other than plaintiff engaged in the business of asbestos abatement in the state of North Carolina. As an appellate court we are "not bound by the findings, but may review and weigh the evidence and find facts" for ourselves. *McClure, supra*, at 402, 302 S.E. 2d at 760. "A preliminary injunction, as a general rule, will be issued only '(1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.'" *Mason, supra*, at 540-41, 320 S.E. 2d at 696, *quoting, Investors Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E. 2d 566, 574 (1977) (emphasis in original). In order for a covenant not to compete to

Masterclean of North Carolina v. Guy

be held as valid and enforceable there must be a showing that it is the following:

1. In writing.

2. Made part of a contract of employment.

3. Based on reasonable consideration.

4. Reasonable both as to time and territory.

5. Not against public policy.

*McClure, supra,* at 402-03, 302 S.E. 2d at 760.

**[2]**  Defendant's first argument is that the preliminary injunction should be vacated because plaintiff failed to show a likelihood of success on the merits. The basis for defendant's argument is that clauses two (2), three (3), and four (4) of the covenant not to compete are unenforceable because they are not reasonable as to territory. Defendant compares the subject covenant not to compete with the covenant not to compete scrutinized in the case of *Welcome Wagon International Inc. v. Pender,* 255 N.C. 244, 120 S.E. 2d 739 (1961). That covenant not to compete was as follows:

NOW, THEREFORE, for and in consideration of this employment, and the compensation to be earned and paid to the Hostess hereunder, said Hostess covenants and agrees that she will not during the term of this employment, and for a period of five whole years thereafter, engage directly or indirectly for herself or as an agent, representative or employee of others, in the same kind or similar business as that engaged in by the company (1) in Fayetteville, North Carolina, or (2) in any other city, town, borough, township, village or other place in the State of North Carolina in which the company is then engaged in rendering its said service, or (3) in any city, town, borough, township, village or other place in the United States in which the Company is then engaged in rendering its said service, or (4) in any city, town, borough, township or village in the United States in which the company has been or has signified its intention to be, engaged in rendering its said service.

*Pender, supra,* at 246, 120 S.E. 2d at 740. The covenant not to compete considered in *Pender, supra,* is strikingly similar to the

covenant the parties entered into in the case *sub judice*. If restriction one (1) in the covenant in the case *sub judice* stated Fayetteville, North Carolina instead of Forsyth County, North Carolina, the covenants would be virtually identical. However, there are some factual circumstances in the case *sub judice* which are distinguishable from *Pender, supra*. In *Pender, supra*, defendant was employed by plaintiff as a hostess whose responsibility was to procure a sufficient number of sponsors to ensure the program's success. Plaintiff was a Delaware Corporation in the advertising business, which employed hostesses to contact prospective customers for local merchants and enhance said merchant's good will among newcomers to the local market. Plaintiff in *Pender, supra*, operated in approximately 1,200 cities and employed 3,500 hostesses. The Court in *Pender, supra*, stated the following:

> The court is without power to vary or reform the contract by reducing either the territory or the time covered by the restrictions. *However, where, as here, the parties have made divisions of the territory, a court of equity will take notice of the divisions the parties themselves have made, and enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable.* It is patent that division (1)—Fayetteville—is not unreasonable. Likewise it appears that divisions (3) and (4)—any city or town in the United States in which the plaintiff is doing or intends to do business—are unreasonable and will not be enforced. Whether (2) is reasonable is for the chancellor.

*Pender, supra*, at 248, 120 S.E. 2d at 742. (Emphasis supplied.) We note that three Justices dissented to the majority opinion in *Pender, supra*. The majority in *Pender, supra*, in upholding the five year time period of the covenant, did not follow *Welcome Wagon International Inc. v. Morris*, 224 F. 2d 693 (4th Cir. 1955), for the stated reason "that decision does not follow the general rule and is not based on sounder reasoning." *Pender, supra*, at 249, 120 S.E. 2d at 742. Quoting 9 A.L.R., p. 1468, the Court in *Pender, supra*, stated the general rule as follows:

> It is clear that if the nature of the employment is such as will bring the employee in personal contact with patrons or cus-

tomers of the employer or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patron or customers, enabling him by engaging in a competing business in his own behalf or for another, to take advantage of such knowledge of or acquaintance with the patrons and customers of his former employer, and thereby gain an unfair advantage, equity will interpose in behalf of the employer and restrain the breach . . . providing the covenant does not offend against the rule that as to time . . . or *as to the territory it embraces it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer.*

*Pender, supra,* at 249, 120 S.E. 2d at 742 (emphasis supplied). This Court has stated the following:

[T]he restraint is unreasonable and void if it is greater than is required for the protection of the promisee or if it imposes an undue hardship upon the person who is restricted. Owing to the possibility that a person may be deprived of his livelihood, the courts are less disposed to uphold restraints in contracts of employment than to uphold them in contracts of sale.

*Wilmar, Inc. v. Liles,* 13 N.C. App. 71, 75, 185 S.E. 2d 278, 281 (1971), *quoting with approval, Little Rock T. & L. Sup. Co. v. Independent L. Serv. Co.,* 237 Ark. 877, 377 S.W. 2d 34 (1964).

In the case *sub judice,* plaintiff's only witness Mr. Smith, the president of the plaintiff corporation, did not testify sufficiently to establish a need for the protection of plaintiff to the extent the covenant places territorial restrictions upon defendant. According to Mr. Smith's testimony, the only states plaintiff had engaged in the business of asbestos abatement since 1979 were Tennessee (one job "a year and a half or two years ago"), Indiana (one job), Mississippi (one job), Georgia ("would say a dozen"), North Carolina ("probably 50") and South Carolina ("perhaps 20"). There was no testimony with respect to the number of contracts performed in Virginia. There was no testimony with respect to the number of contracts performed in Forsyth County. Such testimony does not establish the need for plaintiff's protection by way of a restrictive covenant that embraces the entire United States. Clauses (3) and (4) are patently unreasonable. The trial court

sought to enforce clause (3) by reducing the territorial restriction embracing the United States to five (5) states. This is not the "divisions of the territory" relied upon in *Pender, supra,* at 248, 120 S.E. 2d at 742. The divisions referred to in *Pender, supra,* were the four enumerated divisions in the covenant not to compete; for example "*divisions* (3) and (4) — any city or town in the United States in which the plaintiff is doing, or intends to do business — are unreasonable and will not be enforced." *Id.* (emphasis supplied). We hold that the divisions three (3) and four (4) in the case *sub judice* are likewise unreasonable and the court was without the power to vary or reform the contract by reducing territory. *Pender, supra,* at 248, 120 S.E. 2d at 742. It was unlikely that plaintiff would succeed on the merits of this case and plaintiff was not entitled to have a preliminary injunction issued to defendant.

[3] Defendant next argues that plaintiff failed to show a reasonable apprehension of irreparable injury unless the injunction is granted. We agree.

> To establish a reasonable apprehension of irreparable injury in a case such as this the plaintiff must establish that the likelihood of disclosure of the information is high. In making these determinations courts weigh several factors, among them the circumstances surrounding the termination of employment, the importance of the employee's job, the type of work performed by the employee, the kind of information sought to be protected, and the need of the competitor for the information.

*Travenol Laboratories Inc. v. Turner,* 30 N.C. App. 686, 692, 228 S.E. 2d 478, 483 (1976). In *Turner,* plaintiff sought injunctive relief in three separate ways (1) to prevent defendant in *Turner, supra,* from working for a competitor as a means of enforcing the duty not to disclose confidential information; (2) to prevent defendant from disclosing "all information regarded as confidential," including modification of a westfalia centrifuge; and (3) to prevent defendant from disclosing any written trade secrets or confidential information. *Id.* at 692-93, 228 S.E. 2d at 484. This Court stated:

> North Carolina courts have never enjoined an employee from working for a competitor merely to prevent disclosure of con-

fidential information. Courts in other jurisdictions have granted such injunctive relief very infrequently in special circumstances not present here. In each case the employee had specialized technical training and was involved in research and development. There were circumstances of bad faith or underhanded dealing and the competitor lacked comparable level of technical knowledge and achievement.

*Turner, supra,* at 693, 228 S.E. 2d at 484.

In the case *sub judice,* Mr. Smith testified to the effect that plaintiff terminated defendant's employment; that the vast majority of defendant's work (90%) was the actual removal of asbestos and only a small percentage of defendant's time was spent in customer contacts such as pre-bid conferences; that plaintiff had trained foremen in operating procedures that were not secret but were considered unique; that plaintiff utilized unique safety procedures and a storage tank for oxygen that was unique, but not patented; and that competitors could observe many of the procedures utilized by plaintiff. There was also testimony by defendant that there are schools such as Georgia Technical Institute which he attended to learn about how to remove asbestos from buildings; that the EPA, the U.S. Department of Commerce and National Installation Contractors, as well as private individuals, publish manuals pertaining to asbestos removal; that he had used procedures suggested by the manuals; that companies in the business of asbestos removal basically use the same type of equipment; and that competitors would visit each other's job sites. We hold that the facts and circumstances of this case do not dictate injunctive relief and that the scope of the injunction is so broad that defendant is deprived of a realistic opportunity to use his own skill and talents. *Turner, supra,* at 694, 228 S.E. 2d at 485.

Vacated.

Judges WEBB and WHICHARD concur.