JEFFREY R. KENNEDY, D.D.S., P.A. v. K. CARROLL KENNEDY AND
JERRE KENNEDY

No. COA02-1198

(Filed 19 August 2003)

**1. Appeal and Error— appealability—denial of preliminary injunction—substantial rights affected**

The denial of a preliminary injunction to enforce a covenant not to compete was interlocutory but reviewable on appeal because substantial rights were affected.

**2. Parties— dental practice—enforcement of covenant not to compete—standing of corporate entity**

The trial court correctly refused to find that plaintiff professional corporation was not the proper party in interest and lacked standing to enforce a purchase agreement for a dental practice which included a covenant not to compete. The evidence of an assignment of rights and obligations to plaintiff-corporation was sufficient, and nothing in the record contradicts evidence that plaintiff-corporation had rights and obligations under the agreement. Moreover, plaintiff has shown a likelihood of success in establishing that defendants are estopped from denying the validity of the assignment because employment benefits were accepted from plaintiff.

1

**3. Injunctions— grounds—de novo appellate review**

A preliminary injunction will be issued only if plaintiff is able to show the likelihood of success on the merits and if plaintiff is likely to sustain irreparable loss without the injunction or if the injunction is necessary for the protection of plaintiff's rights during the course of litigation. Appellate review is de novo and the appellate court is not bound by the trial court's findings of fact but may weigh the evidence anew and enter its own findings and conclusions.

**4. Employer and Employee— covenants not to compete— elements**

Covenants not to compete restrain trade and are scrutinized strictly. To be enforceable, they must be in writing, based upon valuable consideration, reasonably necessary for the protection of legitimate business interests, reasonable as to time and territory, and not otherwise against public policy. At the time the contracts containing the covenants are entered, both parties must apparently regard the restrictions as reasonable and desirable.

**5. Employer and Employee— covenant not to compete—dentistry—time and place—reasonable**

A covenant not to compete restricting the practice of dentistry was reasonable as to time and place where it covered only a 15 mile radius and applied for only three years flowing the dentist's departure from the practice.

**6. Employer and Employee— covenant not to compete—dentistry—no solicitation of patients or employees—reasonable**

A covenant not to compete restricting a dentist leaving a practice from employing plaintiff's employees and from soliciting patients was reasonable. The restriction does not cause substantial harm to the public health; at most, it merely inconveniences dental patients. Prohibiting the solicitation and hiring of plaintiff's employees for a three-year period does not violate public policy in that protection of customer relationships and goodwill is well recognized as a legitimate protectable interest of the employer.

**7. Contracts— novation—purchase agreement for dental practice—no clear intent to substitute new agreement**

There was no evidence of a clear intent that a new agreement be substituted for a purchase agreement for a dental practice. The parties simply agreed that they would no longer work together, an option specifically contemplated by the agreement.

**8. Dentists— purchase agreement for practice—not breached or repudiated**

The trial court erred by finding that a professional corporation for practicing dentistry breached a purchase agreement by failing to pay defendants what they were due, unilaterally changing the method of compensation, and terminating one of the defendants. The trial court also erred by finding that plaintiff repudiated the agreement.

**9. Injunctions— preliminary—de novo review by Court of Appeals—evidence for issuance not sufficient**

The evidence on a motion for a preliminary injunction to enforce a covenant not to compete among dentists was not sufficient for issuance of the injunction. The issue was not reached by the trial court and was reviewed de novo by the Court of Appeals.

Judge TYSON concurring in part and dissenting in part.

Appeal by pláintiff from order entered 6 June 2002 by Judge Wade Barber in Orange County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., Denis E. Jacobson and Amanda L. Fields, for plaintiff-appellant.*

*Law Offices of Thomas H. Stark, by Thomas H. Stark, for defendant-appellees.*

MARTIN, Judge.

Jeffrey R. Kennedy, D.D.S., P.A. ("plaintiff") appeals from an order denying its motion for preliminary injunction. We reverse and remand for entry of an order granting the preliminary injunction.

Plaintiff is a dental practice located in Chapel Hill, North Carolina and owned by Jeffrey R. Kennedy, D.D.S. ("Jeff"). Defendant K. Carroll Kennedy, D.D.S. ("Carroll") formed the practice in 1967. In 1984, Carroll hired Jeff, his nephew. In 1992, Carroll sold Jeff

a one-half interest in the practice for $250,000. Carroll and Jeff thereafter worked together as partners for five years. During that time, the practice hired an associate dentist, defendant Jerre Kennedy, D.D.S. ("Jerre"), Carroll's niece and Jeff's first cousin. On 31 July 1996, Carroll sold his remaining interest in the practice to Jeff for $250,000 through an Asset Purchase Agreement. The Asset Purchase Agreement incorporated several exhibits into the agreement, including a restrictive covenant agreement, which included a covenant not to compete, and a provider agreement, which governed Carroll's provision of dental services within the practice (collectively, "the Purchase Agreement"). The Purchase Agreement provided for an initial five-year non-termination period wherein Carroll's employment could be terminated only for cause. After the five-year period, Carroll could be terminated for any reason with 90 days prior written notice. The restrictive covenant agreement would continue in full force and effect in the event the provider agreement were terminated without cause following the initial five-year non-termination period.

As part of the restrictive covenant agreement, Carroll agreed not to open a dentistry practice within a fifteen mile radius of the practice located at 123 W. Franklin Street, Chapel Hill for a period commencing with the sale of the practice on 31 July 1996 and ending three years after Carroll ceased employment with plaintiff. The Purchase Agreement allowed Jeff to assign the agreement to a professional corporation or partnership, provided the assignee executed a guaranty to the effect that it would be jointly and severally liable with Jeff under the Purchase Agreement.

In August 2001, shortly after expiration of the five-year non-termination period, Jeff approached Carroll and informed him that he wanted Carroll to work a more regimented schedule as an employee of the practice. Carroll did not desire to do so, and the two mutually agreed to disassociate. In October 2001, plaintiff provided Carroll written confirmation of the parties' intent that Carroll leave the practice. In his affidavit, Carroll stated that he and Jeff orally agreed that Carroll could open a new practice in Hillsborough despite its being located within a fifteen mile radius of plaintiff's practice, in contravention to the terms of the restrictive covenant agreement.

Plaintiff contends that from August 2001 through February 2002, Carroll actively solicited its patients and employees to follow him to his new Hillsborough practice. In early February, Jeff learned of Jerre's plans to join Carroll in Hillsborough. On 8 February 2002, plaintiff provided Carroll two weeks notice to vacate its office.

JEFFREY R. KENNEDY, D.D.S., P.A. v. KENNEDY

[160 N.C. App. 1 (2003)]

Carroll and Jerre moved out of plaintiff's office on 22 February 2002 and opened a dental practice in Hillsborough in March 2002.

On 15 April 2002, plaintiff filed a complaint against Carroll and Jerre alleging breach of contract, misappropriation of confidential information, and tortious interference with prospective advantage. Defendants answered and asserted counterclaims against plaintiff for anticipatory repudiation of the Purchase Agreement, breach of that agreement, fraud, breach of fiduciary duty, and unfair and deceptive practices. Defendants also asserted equitable defenses of estoppel and the doctrine of unclean hands.

On 7 May 2002, plaintiff moved for a preliminary injunction to enforce the covenant not to compete alleging immediate and irreparable harm. In denying plaintiff's motion on 6 June 2002, the trial court found: (1) plaintiff had breached and repudiated the contract documents and could not enforce them under legal and equitable principles; (2) enforcement of the covenant not to compete would infringe on the rights of patients to choose their own dentists; (3) the covenant not to compete was overbroad as to time and place; (4) identity of dental patients and contact information was not a trade secret; and, (5) plaintiff had not demonstrated a likelihood of success on the merits or the existence of irreparable harm. The trial court preserved for trial the parties' claims to money damages. Plaintiff appeals.

---

The issues are: (1) whether the interlocutory order affects a substantial right that is properly reviewable by this Court; (2) whether plaintiff has standing to enforce the terms of the Purchase Agreement; (3) whether the restrictive covenant agreement is enforceable; (4) whether there was a novation of the Purchase Agreement; (5) whether plaintiff repudiated or breached the Purchase Agreement; (6) whether defendants misappropriated trade secrets; and (7) whether plaintiff is entitled to equitable relief.

## I. Interlocutory Appeal

[1] Plaintiff asserts this interlocutory appeal affects a substantial right and is reviewable even though other issues remain for disposition. We agree. "In cases involving an alleged breach of a non-competition agreement and an agreement prohibiting disclosure of confidential information, North Carolina appellate courts have routinely reviewed interlocutory court orders both granting and denying preliminary injunctions, holding that substantial rights have been

affected." *QSP, Inc. v. Hair*, 152 N.C. App. 174, 175, 566 S.E.2d 851, 852 (2002) (citing *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983); *Iredell Digestive Disease Clinic, P.A. v. Petrozza*, 92 N.C. App. 21, 373 S.E.2d 449 (1988), *affirmed*, 324 N.C. 327, 377 S.E.2d 750 (1989); *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 501 S.E.2d 353 (1998); *Masterclean of North Carolina, Inc. v. Guy*, 82 N.C. App. 45, 345 S.E.2d 692 (1986)). Plaintiff's appeal is properly before this Court and is reviewable.

## II.  Standing

[2] Defendants cross-assign as error the trial court's failure to find that plaintiff is not the proper party in interest and lacks standing to enforce the Purchase Agreement, including the restrictive covenant agreement, as an alternative basis for denying the injunction. Defendants argue the Purchase Agreement was executed between Jeff and Carroll, and that even if Jeff attempted to assign his rights and obligations under the agreement to plaintiff, any such assignment was invalid because the agreement required that an assignment be accompanied by a guaranty executed by the assignee providing that it would be jointly and severally liable under the agreement, and plaintiff never executed any such guaranty. We disagree.

First, we believe the evidence of record is sufficient to show plaintiff's likelihood of success in showing that Jeff assigned his rights and obligations under the agreement to plaintiff. Plaintiff alleges in its complaint that the assignment occurred; Jeff testified that he reviewed the allegations of the complaint, including that he assigned the Purchase Agreement to plaintiff, and that all statements were accurate; Jeff further testified that plaintiff became owner of the asset acquired in the Purchase Agreement, and it was plaintiff who made payments on the loan obtained for the purchase price under the agreement; defendants' answer asserts counterclaims for anticipatory repudiation and breach of contract against plaintiff based upon the terms of the Purchase Agreement, effectively conceding that an assignment occurred; defendants concede in their brief that after Jeff established plaintiff as a corporate entity, both Jeff and Carroll became "employed by that corporate entity . . . and all parties went forward doing business as employ[ees] or contractors of [plaintiff]," rather than Jeff individually; and the evidence shows plaintiff performed the obligations owed Carroll under the Purchase Agreement for several years. Nothing in the record contradicts this evidence tending to show that plaintiff had rights and obligations under the agreement.

JEFFREY R. KENNEDY, D.D.S., P.A. v. KENNEDY

[160 N.C. App. 1 (2003)]

Moreover, even if plaintiff failed to execute any required guaranty concurrently with the assignment, plaintiff has shown a likelihood of success in establishing that defendants are estopped from denying the validity of the terms of the Purchase Agreement as between Carroll and plaintiff. As our Supreme Court has noted, the courts of this State recognize the doctrine of quasi-estoppel, also termed "estoppel by acceptance of benefits." *Brooks v. Hackney*, 329 N.C. 166, 404 S.E.2d 854 (1991). The court stated:

> "The doctrine of estoppel rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result." *Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980). Equity serves to moderate the unjust results that would follow from the unbending application of common law rules and statutes. It is well settled that "a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement." *Advertising, Inc. v. Harper*, 7 N.C. App. 501, 505, 172 S.E.2d 793, 795 (1970) (lessee estopped to deny the validity of a lease because of insufficient description of the premises where he had paid the rent for seven months of a nine-year lease).

*Id.* at 173, 404 S.E.2d at 859; *see also, e.g., Godley v. County of Pitt*, 306 N.C. 357, 361, 293 S.E.2d 167, 170 (1982) (" 'quasi' estoppel, which does not require detrimental reliance per se by anyone, . . . is directly grounded instead upon a party's acquiescence or acceptance of payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts."); *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 226, 517 S.E.2d 406, 413 (1999) (quasi-estoppel based upon principle that " ' "where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it." ' " (citations omitted)).

Applying those principles, the *Brooks* court determined that although the agreement between the parties was technically invalid for want of definiteness, the plaintiff was estopped from denying its validity, and the contract was enforceable. In so holding, the court observed that for several years the parties fulfilled the obligations of the agreement, including the making of required payments, and that the defendants had reasonably relied on the validity of the agreement through the parties' fulfillment of its terms. *Id.*

Likewise, the evidence forecast in the present case shows that Carroll received and accepted benefits from plaintiff pursuant to the Purchase Agreement in the years following plaintiff's formation and prior to his disassociation from plaintiff. Defendants concede in their brief that once Jeff formed plaintiff as a corporate entity, Carroll became "employed by that corporate entity;" thus, it follows that plaintiff was the party who performed the terms of the agreement as to Carroll's compensation for his services and other terms of his employment under the provider agreement. Jeff testified that patients who received treatment were patients of the practice, not of any individual dentist, and that patients paid plaintiff, not the dentist. Carroll enjoyed the benefit of being employed through plaintiff in the manner set forth in the agreement, and accepted plaintiff's performance of the agreement, such as the receipt of compensation. Defendants cannot now assert that any technical deficiency in the assignment bars plaintiff's right to enforce the terms of the Purchase Agreement, and particularly since defendants concurrently assert that plaintiff repudiated and breached the terms of that very agreement. This argument is overruled.

### III. Standard of Review

[3] "A preliminary injunction is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Redlee/SCS, Inc. v. Pieper,* 153 N.C. App. 421, 423, 571 S.E.2d 8, 11 (2002) (emphasis in original). In reviewing the denial of a preliminary injunction, an appellate court is not bound by the trial court's findings of fact, but may weigh the evidence anew and enter its own findings of fact and conclusions of law; our review is *de novo. Id. "De novo* review requires us to consider the question anew, as if not previously considered or decided," *In re Soc'y for the Pres. of Historic Oakwood v. Bd. of Adjustment of Raleigh,* 153 N.C. App. 737, 740, 571 S.E.2d 588, 590 (2002), and such a review of the denial of a preliminary injunction is "based upon the facts and circumstances of the particular case." *Kinsey Contracting Co. v. Fayetteville,* 106 N.C. App. 383, 385, 416 S.E.2d 607, 609, *disc. review denied,* 332 N.C. 345, 421 S.E.2d 149 (1992).

**JEFFREY R. KENNEDY, D.D.S., P.A. v. KENNEDY**

[160 N.C. App. 1 (2003)]

## IV. Enforceability of Restrictive Covenants

[4] The trial court concluded that the covenant not to compete was overly broad, unreasonable as to place and time, and unenforceable. The covenants restricted Carroll from practicing dentistry in any location within a fifteen mile radius of plaintiff's office for a period of time starting with the closing date of the sale to Jeff and ending three years from the date Carroll discontinued work with plaintiff. The covenants also restricted Carroll from soliciting professional referral services, patients, and employees of plaintiff.

Covenants not to compete restrain trade and are scrutinized strictly. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 (1988). To be enforceable, covenants must be (1) in writing, (2) based upon valuable consideration, (3) reasonably necessary for the protection of legitimate business interests, (4) reasonable as to time and territory, and (5) not otherwise against public policy. *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983). "[A] further consideration by this Court, in recognizing the validity of these covenants, is that at the time of entering these contracts containing covenants not to compete both parties apparently regarded the restrictions as reasonable and desirable." *United Laboratories*, 322 N.C. at 649, 370 S.E.2d at 380. It is undisputed that the covenants at issue meet the first three factors. The remaining issues are whether (1) they are reasonable as to time and place and, (2) not otherwise against public policy.

### A. Time and Place

[5] Our Supreme Court has upheld the validity of a covenant restricting competition for seven years within Durham and Orange Counties, finding the covenant reasonable as a matter of law. *Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 226, 333 S.E.2d 299, 303-04 (1985) (citing *Jewel Box Stores v. Morrow*, 272 N.C. 659- 662-63, 158 S.E.2d 840, 843 (1968) (upheld agreement not to compete with jewelry business for ten years within ten miles); *Sineath v. Katzis*, 218 N.C. 740, 12 S.E.2d 671 (1940) (upheld agreement not to compete with dry cleaning plant for fifteen years within county); *Sea Food Co. v. Way*, 169 N.C. 679, 86 S.E. 603 (1915) (agreement not to compete with fish dealership within one hundred miles of city for ten years)). Moreover, " '[a] longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*." *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 637-38, 568 S.E.2d 267, ——

(2002) (citation omitted) (upholding restrictive covenant covering two states, but lasting only one year).

The restrictive covenant at issue covers only a fifteen mile radius and restricts Carroll only from opening a competing practice within that radius for three years following his departure from plaintiff's practice. This covenant is significantly less restrictive than that upheld by *Bicycle Transit* and case law cited therein. Moreover, even though Carroll continued to be employed by plaintiff for five years after the date of the agreement, such that the covenant remained effective for a total of some eight years, the covenant restricted only a very small geographic area; thus, the balance of the time and place restrictions was wholly reasonable, and plaintiff has accordingly shown a likelihood of success on the merits of the covenant's enforceability.

## B.  Public Policy

[6] The covenant not to compete also prohibited Carroll from soliciting referrals and prior patients, and from soliciting for employment or employing plaintiff's employees at his new practice. The trial court concluded this restrictive covenant violated public policy by restricting the public's right to choose a particular dentist; that patient records are subject to the patient's control and any contractual agreement to limit the patient's control of such records is void; and that any contract purporting to limit Carroll's ability to hire former employees of plaintiff who had been terminated was unenforceable. We reach a different conclusion.

In *Iredell Digestive Disease Clinic, P.A. v. Petrozza*, 92 N.C. App. 21, 373 S.E.2d 449 (1988), *affirmed*, 324 N.C. 327, 377 S.E.2d 750 (1989), this Court summarized the applicable principles:

> A covenant not to compete between physicians is not contrary to public policy if it is intended to protect a legitimate interest of the covenantee and is not so broad as to be oppressive to the covenantor or the public. *Beam* at 673, 9 S.E.2d at 478. Defendant argues on appeal, as he did before the trial court, that the covenant is void on public policy grounds because enforcing the covenant would deprive Statesville residents of necessary medical care. We find no North Carolina decision which has addressed this particular issue. Other jurisdictions considering the question have found relevant the availability of other physicians in the community affected by the covenant. *See, e.g., Cogley*

*Clinic v. Martini,* 253 Iowa 541, 112 N.W. 2d 678 (1962); *Middlesex Neurological Associates, Inc. v. Cohen,* 3 Mass. App. 126, 324 N.E. 2d 911 (1975); *Odess v. Taylor,* 282 Ala. 389, 211 So. 2d 805 (1968). If ordering the covenantor to honor his contractual obligation would create a substantial question of potential harm to the public health, then the public interests outweighs the contract interests of the covenantee, and the court will refuse to enforce the covenant. *See, e.g., Dick v. Geist,* 107 Idaho Ct. App. 931, 693 P. 2d 1133 (1985); and *Lowe v. Reynolds,* 75 A.D. 2d 967, 428 N.Y.S.2d 358 (1980). But if ordering the covenantor to honor his agreement will merely inconvenience the public without causing substantial harm, then the covenantee is entitled to have his contract enforced. *See, e.g., Marshall v. Covington,* 81 Idaho 199, 339 P. 2d 504 (1959).

*Id.* at 27-28, 373 S.E.2d at 453.

Applying this rationale, we conclude plaintiff has shown a likelihood of success on the merits in that the covenant at issue does not cause substantial harm to the public health and, at most, merely inconveniences dental patients. Evidence of record at this stage of the case does not support a finding that enforcement of the agreement would harm the public health. Prior cases concluding that such restrictions harm the public health involve circumstances wherein the health care provider is the sole such provider in the area, or is one of few specialists in a particular area. In this case, the practice is located in the same town as North Carolina's only dental school, and there is no allegation that Carroll was a specialist in a particular field of dental practice, or that if he were, he was only one of few such specialists located within fifteen miles of Chapel Hill. The restrictive covenants do not prohibit patients from choosing their own dentist, but simply bar Carroll from actively soliciting those patients. The covenants likewise do not prohibit patients from accessing and controlling their own dental records; whether plaintiff violated patients' rights by not providing their dental records and other information is irrelevant to the issue of whether the covenant violates public policy.

Likewise, we conclude, based upon the record at this stage, that the covenant prohibiting Carroll from soliciting and hiring plaintiff's former employees for the three-year period does not violate public policy. This Court has recognized that "protection of customer relationships and goodwill against misappropriation by departing employees is well recognized as a legitimate protectable interest of

the employer. The greater the employee's opportunity to engage in personal contact with the employer's customer, the greater the need for the employer to protect these customer relationships." *United Laboratories*, 322 N.C. at 651, 370 S.E.2d at 381 (citations omitted). The evidence demonstrates that plaintiff's employees, many of whom had been employed in plaintiff's practice for several years, were a valuable part of the asset owned by plaintiff, that the employees had developed personal relationships with plaintiff's patients, that the employees were an integral part of a patient's experience with plaintiff, and that Carroll's solicitation of those employees to join his new practice resulted in plaintiff losing patients to Carroll's practice. Under these circumstances, plaintiff has demonstrated the likelihood of its success in showing it was entitled to contract with Carroll to protect its interest in maintaining the goodwill and relationships that its staff had fostered with the practice's patients over time. *See Precision Walls, Inc.*, 152 N.C. App. at 638-39, 568 S.E.2d at —— (upholding as reasonable scope of activity prohibited by covenant not to compete which included provision prohibiting former employee from employing company's employees, soliciting company's employees for employment, or inducing company's employees to leave employment with company).

## V. Novation

[7] Defendants cross-assign as error the trial court's failure to find as an alternative basis for denying relief that the parties had agreed to a novation of the Purchase Agreement such that they were relieved of all obligations under the agreement. Defendants base this contention upon statements in Jeff's October 2001 letter to Carroll to the extent that "there is no alternative to ending our association," as well as Carroll's testimony that all parties agreed he would leave the practice.

For a novation to occur, the contracting parties must demonstrate a clear and definite intent to substitute a new agreement for the existing agreement. *Kirby Building Systems, Inc. v. McNiel*, 327 N.C. 234, 393 S.E.2d 827 (1990), *reh'g denied*, 328 N.C. 275, 400 S.E.2d 453 (1991). Novation may never be presumed. *Wilson v. McClenny*, 262 N.C. 121, 136 S.E.2d 569 (1964). Although it is undisputed that the parties agreed Carroll would leave the practice, there is no evidence of a clear intent among the parties that a new agreement be substituted for the Purchase Agreement. The parties simply agreed that they would no longer work together, an option specifically contem-

JEFFREY R. KENNEDY, D.D.S., P.A. v. KENNEDY

[160 N.C. App. 1 (2003)]

plated by the provider agreement. The record does not support defendants' argument.

## VI. Breach of Agreement by Plaintiff

[8] The trial court found plaintiff breached the Purchase Agreement by failing to "pay the Defendants what they were due, unilaterally chang[ing] the method of compensation which had been in effect for several years, and terminat[ing] [Carroll] with less than ninety (90) days notice." The trial court also found plaintiff repudiated the agreement when Jeff communicated to Carroll in August 2001 his desire that Carroll continue as an employee of plaintiff rather than an independent contractor.

In order to prevent plaintiff from obtaining injunctive relief on grounds of repudiation or breach of the agreement, defendants must show the alleged breach was "substantial and material and goes to the heart of the agreement. Where the breach by the party seeking enforcement of a contract by injunctive relief is not material, however, it will not prevent him from obtaining such equitable relief." *Combined Ins. Co. v. McDonald*, 36 N.C. App. 179, 183, 243 S.E.2d 817, 819 (1978).

Defendants have failed to direct this Court to evidence which would support a finding that plaintiff failed to pay defendants money owed them under the Purchase Agreement. While Carroll's affidavit indicates that his bookkeeper discovered a shortage in his account, absent substantive evidence that Carroll did not receive the compensation to which he was entitled under the agreement, this bare assertion is insufficient to prove plaintiff breached the agreement.

The sole basis of defendants' argument that plaintiff breached the agreement by changing the method of compensation is Jeff's testimony that at certain times plaintiff paid defendants more than that to which they were entitled under the agreement. This evidence simply indicates that defendants in fact received what they were entitled to under the agreement, and the record at this stage does not support a finding that their receipt of additional compensation from plaintiff amounted to a breach of a material term of the agreement.

The provider agreement also established that Carroll could be terminated without cause after the expiration of the first five years of the agreement with 90 days prior written notice of the termination date. In February 2002, plaintiff informed Carroll he had two weeks to leave the practice. However, Carroll received written notice as

JEFFREY R. KENNEDY, D.D.S., P.A. v. KENNEDY

[160 N.C. App. 1 (2003)]

early as October 2001 in a letter from Jeff that his employment with plaintiff would cease in the near future. While the October letter did not employ the phrase "termination notice," the letter put Carroll on notice of the impending disassociation. Plaintiff has demonstrated a likelihood of success in showing that its failure to give an additional 90 days written express termination notice was not a material breach or repudiation of the Purchase Agreement. *See id.* at 184, 243 S.E.2d at 820 ("mere failure of an employer to give the notice of termination of employment provided for in its contract of employment with its employee, nothing else appearing, does not as a matter of law constitute a material breach which will prevent the employer's seeking equitable remedies to prevent a breach of a covenant prohibiting the employee from competing with the employer within a reasonable area and time.").

Finally, we disagree with the trial court's finding that Jeff's August 2001 communication that he desired Carroll to continue providing services to plaintiff as an employee rather than a contractor amounted to a repudiation of the Purchase Agreement. The Purchase Agreement did not specifically require that Carroll provide services to plaintiff as an independent contractor; thus, the suggestion that Carroll alter his status to something other than independent contractor does not amount to a repudiation or breach of the terms of the agreement. Defendants further suggest that Jeff's statements amounted to plaintiff's termination of the provider agreement, and because that agreement was a non-severable part of the Purchase Agreement, plaintiff evinced an intent to repudiate the entire agreement between the parties. However, even if Jeff's statements evinced an intent to terminate the provider agreement, that agreement specifically stated that in the event the provider agreement were terminated without cause following the initial five-year non-termination period, the restrictive covenant agreement would continue in full force and effect. These arguments are overruled.

## VII. Trade Secrets

Plaintiff contends the trial court erred in concluding that patient identity and contact information did not constitute a trade secret and that defendants did not misappropriate trade secrets. However, we need not reach the merits of this argument, as the issue does not bear on the trial court's decision to deny equitable relief, and because the court's conclusions on this issue will not be determinative of the issue at any trial on damages.

### VIII.  Equitable Relief

**[9]**  "Our courts have long recognized that a party seeking equitable relief, such as injunctive relief, must come before the court with 'clean hands.' Those who seek equitable remedies must do equity, and this maxim is not a precept for moral observance, but an enforceable rule." *Combined Ins. Co.*, 36 N.C. App. at 182, 243 S.E.2d 819. Defendants raised various equitable defenses in their answer, including the doctrine of unclean hands, estoppel, and fraud. The trial court, having determined the restrictive covenants were unenforceable, did not address defendants' equitable defenses in its order. Defendants have neither cross-assigned as error the trial court's failure to address its equitable defenses as an alternative basis for denying the injunction, nor have they presented these arguments to this Court such that any objections to the entry of an injunction on the basis of their defenses are not preserved. *See* N.C. R. App. P. 10(b)(1) (2002).

Moreover, under the wide latitude of *de novo* review, this Court is entitled to review the evidence of record anew and make its own findings of fact and conclusions necessary to a resolution of all pertinent issues. *See, e.g., In re Soc'y for the Pres. of Historic Oakwood, supra.* We are entitled to weigh the evidence and arrive at our own determinations as though, as in this case, the issue had not been previously addressed by the trial court. *Id.* Upon such a review, we conclude the record at this stage fails to set forth evidence supporting any equitable reason why the injunction should not issue. Given our findings that the restrictive covenants were reasonable and enforceable, that they did not violate public policy, that plaintiff did not waive the covenants, that plaintiff did not materially breach or repudiate the Purchase Agreement, and that there was no novation, we find no basis for a determination that plaintiff acted fraudulently, with unclean hands, or that it should otherwise be estopped from receiving an injunction.

In summary, plaintiff has shown a likelihood of success on the merits of its case, based upon the record evidence at this stage in the proceedings, through a showing that the restrictive covenants are reasonable and enforceable against Carroll, and that Carroll's establishment of a practice in Hillsborough violates the covenants. Plaintiff also established irreparable harm through a showing that a substantial portion of its patients have followed Carroll and Jerre to the new practice. We decline to address plaintiff's claim for misappropriation of trade secrets. The evidence at this stage does not support a conclusion that plaintiff breached or repudiated the agreement, or that a

novation occurred. Defendants have failed to preserve any arguments against issuance of the injunction premised upon their equitable defenses asserted below, and our *de novo* review of the record reveals no equitable reason why the injunction should not issue. The trial court's denial of plaintiff's motion for a preliminary injunction is hereby reversed and the matter remanded with instructions that the trial court enter an order in compliance with G.S. 1A-1, Rule 65, granting plaintiff a preliminary injunction enforcing the non-competition agreement. *See, e.g., QSP, Inc.,* 152 N.C. App. at 179, 566 S.E.2d at 854.

Reversed and remanded with instructions.

Judge LEVINSON concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge, concurring in part, dissenting in part.

I concur with the majority's opinion except for section VIII, Equitable Relief. I would remand this case to the trial court for hearing and findings of fact regarding whether plaintiff is entitled to equitable relief. I respectfully dissent from section VIII.

This Court's standard to review the denial of a preliminary injunction is *de novo.* The decision to grant or deny injunctive relief remains discretionary, and its terms must comply with Rule 65(d). The limited record before us does not provide a basis to grant or deny equitable relief.

As a general rule, a preliminary injunction

is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*Investors, Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (citations omitted). Plaintiff met the first prong for issuance of a preliminary injunction by showing likelihood of prevailing at trial. The covenants are legally enforceable, and Carroll's establish-

ment of a practice in Hillsborough violates the time and place restrictions in the covenants. Jeff did not breach, repudiate, or novate the agreement.

The second prong requires a showing of irreparable harm. "In every case where the covenant not to compete is found to be reasonable and valid, however, the plaintiff is entitled to a remedy; either the agreement must be enforced or the court must find that plaintiff has an adequate remedy at law for money damages." *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 404, 302 S.E.2d 754, 761 (1983).

> The focus in cases such as the one now under consideration, however, is not only whether plaintiff has sustained irreparable injury, but, more important, whether the issuance of the injunction is necessary for the protection of plaintiff's rights during the course of litigation; that is, whether plaintiff has an adequate remedy at law.

*Id.* at 406, 302 S.E.2d at 762.

It is well established in North Carolina that injunctive relief will be granted only when irreparable injury is both real and immediate. *Telephone Co. v. Plastics, Inc.*, 287 N.C. 232, 214 S.E.2d 49 (1975); *Membership Corp. v. Light Co.*, 256 N.C. 56, 122 S.E.2d 761 (1961). "It is a basic principle of contract law that one factor used in determining the adequacy of a remedy at law for money damages is the difficulty and uncertainty in determining the amount of damages to be awarded for defendant's breach." *A.E.P. Industries*, 308 N.C. at 406-07, 302 S.E.2d at 762. "Specifically, the court must decide whether the remedy sought by the plaintiff is the most appropriate for preserving and protecting its rights or whether there is an adequate remedy at law." *Id.* at 406, 302 S.E.2d at 762.

A preliminary injunction may not issue unless the movant carries the burden of persuasion as to each of the prerequisites. *E.g., Pruitt v. Williams*, 288 N.C. 368, 218 S.E.2d 348 (1975). Once this burden is carried, it still remains in the court's discretion whether to grant the motion for a preliminary injunction. *Id.* As Justice Ervin stated in *Huskins v. Hospital*, 238 N.C. 357, 360, 78 S.E.2d 116, 119-20 (1953):

> The hearing judge does not issue an interlocutory injunction as a matter of course merely because the plaintiff avowedly bases his application for the writ on a recognized equitable ground. While equity does not permit the judge who hears the application to

decide the cause on the merits, it does require him to exercise a sound discretion in determining whether an interlocutory injunction should be granted or refused.

"One who seeks equity must do equity." *Creech v. Melnik*, 347 N.C. 520, 529, 495 S.E.2d 907, 913 (1998). Plaintiff has alleged and must show entitlement to equitable relief. Defendants have alleged and it is their burden to prove their equitable defenses. Defendants' allegations of fraud and unclean hands against plaintiff raise a genuine issue of plaintiff's entitlement to equitable relief. These allegations were never addressed by the trial court. The majority's opinion does not address them here.

The trial court held the contract to be invalid, against public policy, and unenforceable and denied injunctive relief on those grounds. The trial court never reached the issue of plaintiff's eligibility for an injunction under a valid contract nor defendant's equitable defenses. There is insufficient evidence in the record before us to determine whether equity warrants the issuance of an injunction. "[T]he trial judge is in the best position to exercise this discretion. He hears the evidence, observes the witnesses, considers the arguments of counsel, and weighs and balances the equities." *A.E.P. Industries*, 308 N.C. at 419, 302 S.E.2d at 769 (Justice Martin dissenting, joined by Justices Copeland and Exum). As the record on this issue is silent and the trial court has not been given the opportunity to exercise this discretion, I would remand for the trial court to hold a hearing on the issuance of an injunction. The granting of an injunction by the majority's opinion requires the parties to return to the trial court to determine the nature and extent of the injunction granted. The parties must return to the trial court, in any event, since the issue of damages was specifically reserved.

Judicial restraint and judicial economy require that the appropriate remedy be fashioned in accordance with both Rule 65(d) and all other equitable considerations. I would remand this case to the trial court to hold a hearing, review the evidence in light of the alleged defenses, and determine whether injunctive relief is warranted. I respectfully dissent.