McCULLOUGH, Judge.
This appeal from summary judgment arises from the following undisputed facts: Bill and Nellie Barringer ("plaintiffs") are developers of the Oak Creek Subdivision ("Oak Creek"), as recorded in a plat in the Catawba County Registry. In the different sections of Oak Creek, plaintiffs retained ownership of lot 6 of Block A, lots 4, 5, 6 & 11 of Block B, and lots 1, 2, 3 & 4 of Block C. All of plaintiffs' lots were unimproved at the time of the filing of the pleadings. Before selling the lots in Oak Creek, plaintiffs placed identical restrictive covenants in warranty deeds sold for each lot, and duly recorded in 1988. The relevant covenant provisions of the deeds required:
1. All lots in said subdivision shall be known, described and used as residential lots only and no part of any of said lots shall be used for any type of business, commerce or industry except, however, a professional office within a residence may be permitted, provided that there are no employees working in said office who are not residents of that residence. Except as permitted by Paragraph 6 hereof, no other structure of any type shall be erected, altered, placed or permitted to remain on any lot, other than one detached, single-family dwelling.
2. No trade or business or obnoxious or offensive activity shall be carried on upon any lot or tract, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.
3. All dwellings erected on said lots shall contain a minimum of 1,500 square feet of heated floor space ....
4. All dwellings constructed shall be placed approximately midway between the property lines and shall be no nearer than thirty (30) feet from the front property line and fifteen (15) feet from the closest side property line....
5. The exterior of all structures constructed in this subdivision shall be principally of brick, stone, wood, or vinyl siding, or a combination of said materials. No cement blocks, cinder blocks, or asbestos siding shingles may be exposed on the exterior or above the ground level and all driveways must be paved with either asphalt, brick, or concrete.
6. No structures of a temporary character, no trailers, no mobile home, noshacks or tents may be placed or erected on said lots. There may be one, but not more than one, detached garage or utility or accessory building, but it must comply with all other restrictions contained herein for the main building, including the surface of the exterior and including the distance from front and side lines.
****
9. No lot shall be used or maintained as a dumping ground for rubbish, trash, garbage, or other waste.... All unimproved lots shall be kept neat and mowed at regular intervals with all unsightly debris and fallen trees removed therefrom.
In 1990, these covenants were amended to add the following:
18. The Developer shall name an Architectural Review Board, which will review all proposed building plans prior to the time any owner secures a building permit to commence construction.... Such approval shall be at the discretion of the Architectural Review Board. Disapproval of plans may be based by the Architectural Review Board upon any grounds, including purely aesthetic considerations ....
James and Cindy Hoffman ("defendants") purchased lot 11 of Block A from plaintiffs by warranty deed recorded 16 March 1993. Defendants purchased lots 9 & 10 from plaintiffs by warranty deed recorded 24 June 1998. The deeds for each of the three lots contained the above covenants. Defendants' main dwelling was on lot 11. In 1999 defendants placed an accessary building on lot 10, though lot 10 possessed no dwelling. In 2000, an attorney representing plaintiffs wrote a letter to defendants stating that the accessory building on lot 10 was in violation of the restrictive covenants paragraphs 5 & 6. The attorney contacteddefendants by phone to determine whether the building was made of metal, and was told by defendants that it was made of wood. Also without a residential dwelling, in April of 2002 defendants placed an accessory building, 12 feet by 24 feet, on lot 9. Prior to preparing the site and the placement of this accessory structure, defendants had obtained a building permit. Defendants did not submit any type of plans, proposals or written materials to the Architectural Review Board ("ARB") before obtaining the building permit, and subsequently constructing what was a "Dutch" type accessory structure. Shortly after the installation of the accessory structure, plaintiffs demanded in writing the removal of both structures on lots 9 and 10.
Plaintiffs filed suit on or about 20 May 2002. Defendants filed their answer and counterclaim on 29 July 2002. In their counterclaim, defendants raised the doctrine of "unclean hands." Defendants alleged that plaintiffs violated covenant paragraph 9 by leaving chunks of concrete on one of plaintiffs' lots for nine to twelve months, allowing grass to grow to the level of 3½ feet on another of their lots, and depositing other trash and rubbish behind the Oak Creek pond. After first hearing summary judgment motions on the action, a 13 May 2003 order by the trial court required that the plans for the lot 9 accessory structure be submitted to the ARB pursuant to plaintiffs' amended complaint, and that all outstanding issues be resolved at a rehearing after the ARB's decision. Certain plans and documents relating to the lot 9 structure were submitted by defendants to the ARB. The plans weredenied because there was no main residential dwelling on lot 9, and the building materials did not match those of defendant's dwelling on lot 11.
In a subsequent order filed 22 July 2003 after a 7 July 2003 hearing, the court found as a matter of law the following: That defendants could amend the pleadings in which they could allege the decision of the ARB was arbitrary and capricious, but that the decision was in good faith and under the reasonable objectives of the Oak Creek scheme; that the covenants were not ambiguous, and clearly required any detached structure be placed only on a lot where there is an existing structure, and that placement shall otherwise conform with the covenants; that these structures be removed; that plaintiffs were in violation of the covenants by failing to mow their lots regularly, and failing to remove the concrete blocks; and lastly, that plaintiffs had not waived the right to enforce the covenants, and that there was no doctrine of "unclean hands" available to defendants. The court enjoined the parties from any further violation of the restrictive covenants and ordered defendants' accessory structures be removed within thirty days of judgment. Further, the court ordered that defendants be enjoined from putting an accessory structure on either lot in the future unless a main dwelling is constructed, and both are approved by the ARB. Plaintiffs were ordered to mow their unimproved lots regularly, and make sure no rubbish was left on any of their lots by themselves, employees, or agents. Plaintiffs were denied an award of attorney's fees. Both parties filed an appeal, and assigned error to the order. Plaintiffs have withdrawn their assignments of error. Defendants allege the court erred in finding that the relevant restrictive covenants are clear and unambiguous, that the covenants do require accessory structures be placed midway between the property lines, and that the doctrine of "unclean hands" was unavailable. For the reasons stated herein, we find the trial court's judgment was rendered without error.
Defendants' first and second issues regard covenant paragraphs 1, 4, & 6. They claim these paragraphs create an ambiguity as to whether accessory structures can only be placed on lots where a residential dwelling exists, and whether or not the accessory buildings need to comply with the front and back set-back provisions. We find no such ambiguity.
It has long been held by our Supreme Court that "restrictive covenants are valid so long as they do not impair the enjoyment of the estate and are not contrary to the public interest." Karner v. Roy White Flowers, Inc., 351 N.C. 433, 436, 527 S.E.2d 40, 42 (2000). The original parties to a restrictive covenant may structure the covenants, and any corresponding enforcement mechanism, in virtually any fashion they see fit. Wise v. Harrington Grove Cmty. Ass'n, 357 N.C. 396, 400-01, 584 S.E.2d 731, 735-36, reh'g denied, 357 N.C. 582, 588 S.E.2d 891 (2003); see Runyon v. Paley, 331 N.C. 293, 299, 416 S.E.2d 177, 182 (1992) (where it was held an owner of land in fee has the right to restrict the sale of his land subject to any otherwise lawfulrestriction). The effect to be given unambiguous language contained in a written instrument, as a clear reflection of the parties' intent, is a question of law. Id. at 305, 416 S.E.2d at 186. While we are to review the plain language of a restrictive covenant under the rule of strict construction, this rule may not be used "'to defeat the plain and obvious purposes of a restriction.'" Long v. Branham, 271 N.C. 264, 268, 156 S.E.2d 235, 239 (1967)(citations omitted).
In the case at bar, covenant paragraph 1 states, "[a]ll lots in said subdivision shall be known, described, and used as residential lots only," and that "[e]xcept as permitted by Paragraph 6," no other structure "shall be erected" "other than one detached, single-family dwelling." (Emphasis added.) Covenant paragraph 6 then states that on "said lots" there may be only one "detached garage or utility or accessory building" "comply[ing] with all other restrictions contained herein for the main building." Covenant paragraph 4 requires "[a]ll dwellings constructed shall be placed...no nearer than thirty (30) feet from the front property line and fifteen (15) feet from the closest side property line."
We find this language without ambiguity. It clearly states that all lots are residential, and if a lot owner wishes to add an accessory type structure on said residential lot, it must be detached from the main building and otherwise in conformance with the covenants. It is clear the intent of these covenants was to create a residential subdivision, which maintained a level of lot-by-lot aesthetic uniformity and cohesiveness, for the purpose of protecting and even increasing the property value of all Oak Creek owners. While the use of the word "dwelling" in paragraph 4 to describe the set-back provisions may initially raise a question as whether it applies to an accessory structure, this is clearly resolved in paragraph 6 which states that accessory structures shall adhere to the covenants setting out "the distance from front and side lines." Cf. Hullett v. Grayson, 265 N.C. 453, 453, 144 S.E.2d 206, 206-07 (1965) (where the Court found the following covenant to be ambiguous and unenforceable: "No temporary building, garage, garage apartment or trailer shall be erected thereon for temporary or permanent use.") Id. (emphasis added). In Grayson, the court found invalid what was clearly a patently ambiguous covenant.
Lastly, defendants contend they were improperly denied the equitable defense of "unclean hands" where plaintiffs failed to adhere to covenant paragraph 9 relating to unimproved lots. We do not agree.
"Injunctive relief to enforce the terms of a contract will not be granted a party who has himself breached the terms of the contract when his breach is substantial and material and goes to the heart of the agreement." Insurance Co. v. McDonald, 36 N.C. App. 179, 183, 243 S.E.2d 817, 819 (1978). However, such relief is available to a party seeking enforcement of a contract where that party's breach is immaterial, and therefore has not acted as a waiver of the material contract provisions. Id.; Jeffrey R.Kennedy, D.D.S., P.A. v. Kennedy, 160 N.C. App. 1, 14-15, 584 S.E.2d 328, 337, disc. review dismissed, 357 N.C. 658, 590 S.E.2d 267 (2003).
In the case at bar, at the heart of the plain language of the restrictions on Oak Creek is a regulation of the improved lots of the Oak Creek Subdivision. Pursuant thereto, each lot, when improved, must have a residential dwelling conforming to a standard of aesthetic design set out in the covenants and approved by the ARB. Paragraph 9, of which the court found plaintiff to be in breach, relates to the general tending of the unimproved lots, and is not subject to review by the ARB. Plaintiffs' minor breach therefor did not materially affect the heart of the Oak Creek development covenants, nor act as a waiver of those requirements for improvements on the residential lots. This is not a case where plaintiffs constructed an accessory-type structure on a residential lot without it being anchored by a residential dwelling, and then sought to enforce a covenant contrary to their own actions.
After close review of the transcripts, records, and briefs, and based on the analysis herein, we hereby affirm the trial court's judgment.
Affirmed.
Chief Judge MARTIN and Judge STEELMAN concur.
Report per Rule 30(e).