Sandhills Home Care, L.L.C. v. Companion Home Care – Unimed, Inc., 2016 NCBC 59.

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 15 CVS 3329

SANDHILLS HOME CARE, L.L.C., )
)
Plaintiff, )
vs. )
)
COMPANION HOME CARE - )
UNIMED, INC., CHARLES VINSON )
GRAHAM, MARY JACOBS, )
ANDRIANNA EMANUEL, CASEY )
LOCKLEAR, SHANITA HARRIS, )
CONDOLA CARBOUGH, MOESHA )
HOLT, KORTNEY JACOBS, )
JENNIFER KNIGHT, NATALIE )
LOCKLEAR, SUMMER )
MCLAUGHLIN and JOANNA )
MISHUE. )
)
Defendants. )

OPINION AND ORDER

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. §7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER is before the Court upon (i) Defendants Companion Home Care – Unimed, Inc. and Charles Vinson Graham's Motion to Dismiss Plaintiff's Amended Verified Complaint, (ii) Mary Jacobs' Motion to Dismiss Plaintiff's Amended Verified Complaint, (iii) Kortney Jacobs' Motion to Dismiss Plaintiff's Amended Verified Complaint, and (iv) Shanita Harris' (collectively, with Companion Home Care and Graham, the "Moving Defendants") Motion to Dismiss Plaintiff's Amended Verified Complaint (collectively, the "Motions to Dismiss"). The Moving Defendants filed the Motions pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

THE COURT, having considered the Motions, briefs in support of and in opposition to the Motions, appropriate matters of record, and the arguments of counsel at the hearing on the Motions, concludes as stated herein.

> *Van Camp, Meacham & Newman, PLLC, by Thomas M. Van Camp, for Plaintiff Sandhills Home Care, LLC.*
>
> *Teague Campbell Dennis & Gorham, LLP, by Jennifer B. Milak, Leslie P. Lasher, and Justin G. May, for Defendants Companion Home Care – Unimed, Inc. and Charles Vinson Graham.*
>
> *Locklear, Jacobs, Hunt & Brooks, by Grady L. Hunt, for Defendants Mary Jacobs, Shanita Harris, and Kortney Jacobs.*

McGuire, Judge.

### FACTUAL AND PROCEDURAL BACKGROUND

1.      Plaintiff Sandhills Home Care, LLC ("Plaintiff") is headquartered in Pembroke, North Carolina, and provides home health care to customers in and around Robeson County, North Carolina.[1]  Plaintiff provides home care to its customers within a radius of 100 miles from Pembroke, North Carolina.[2]

2.      Defendant Companion Home Care-Unimed, Inc. ("Companion") is headquartered in Lumberton, North Carolina and  is a "direct competitor of the Plaintiff,"[3] providing the same home health care services as Plaintiff to customers in the same geographic area.  Defendant Charles Vinson Graham ("Graham") is the President and owner of Companion.[4]

3.      Plaintiff employs qualified individuals to provide its home health care services and its employees have "constant and direct contact with Plaintiff's customers at the customer's home or residence" and typically provide such care on a "one-on-one basis."[5]  The

---

[1] Am. Compl. ¶ 1.
[2] *Id.* at ¶ 20.
[3] *Id.* at ¶¶ 2, 21.
[4] *Id.* at ¶ 3.
[5] Am. Compl. ¶ 18

employees "develop over time a strong bond, both professionally and personally" with Plaintiff's customers.[6]  Plaintiff alleges that because of this strong bond, it requires its employees to enter into employment agreements that contain restrictive covenants prohibiting the employees from competing with Plaintiff, from soliciting Plaintiff's customers following termination of employment, and from inducing Plaintiff's employees to terminate employment with Plaintiff.[7]  Plaintiff required employees to sign one of two different employment agreements as a condition of employment: the At-Will Employment Agreement ("At-Will Agreement")[8] or the Non-Compete Agreement ("Non-Compete Agreement").[9]  The restrictive covenants in the At-Will Agreement provide as follows:

**COVENANT NOT TO COMPETE.**

(b)      Employee hereby covenants and agrees that, for a period of one (1) year following the termination of his/her employment relationship with Employer, for whatever reason, whether voluntary or involuntary, and for cause or no cause, he/she shall not directly or indirectly, on behalf of himself or any other person, company, or entity:

(i)  work for, provide services for, consult with, or otherwise assist any individual or entity who is in the home health or personal care business competing with the Employer. This covenant not to compete shall be limited to any county in North Carolina where Employer is providing services at the time of Employee's separation;

(ii) solicit the sale of, sell, or otherwise provide any services that are similar to or competitive with services offered by Employer, to any person, company or entity which was a client or a potential client of Employer for such services and with whom Employee had direct contact with during the two (2) years prior to Employee's separation;

(iii) solicit, attempt to persuade or communicate with any client of Employer or any potential client of Employer with whom Employee had direct contact with during the two (2) years prior to Employee's separation of employment with Employer, to discontinue, limit or otherwise interfere with business relationship between Employer and said client(s).

---

[6] *Id.*
[7] *Id.* at ¶ 19.
[8] Am. Compl. Exhs. A-C.
[9] *Id.*, Exhs. D-K.

**NON-INDUCEMENT.** Employee understands that any attempt on the part of Employee to induce others to leave Employer's employ, or any effort by Employee to interfere with Employer's relationship with other employees would be harmful and damaging to Employer. Therefore, Employee expressly agrees that during the term of employment, and for a period of one (1) year thereafter, he/she will not in any way, directly or indirectly, (1) induce or attempt to induce any employee to quit employment with Employer; (2) interfere or disrupt Employer's relations with other employees; (3) solicit or entice any person employed with Employer. In the event that Employee does employ an employee of Employer in violation of this Agreement, Employer shall have the right to seek and obtain a Temporary Restraining Order, *ex parte*, and other injunctive or equitable relief as is necessary to protect its interests.

4.      The restrictive covenants in the Non-Compete Agreement provide as follows:

**NON-COMPETE COVENANT.** Worker will not compete with Sandhills Home Care for a period of one (1) year after Worker's separation from Sandhills Home Care within the geographical area that defined by a 100 mile radius of Sandhills Home Care, LLC, 401 E. Third Street, Ste. 3C, Pembroke, N.C, 28372.

Further, Worker agrees for a period of one (1) year from the date of Worker's separation from Sandhills Home Care not to perform any work or services for any customer or account for which Sandhills Home Care or its agents, including Worker, performed work or services during the six months preceding the date of Worker's separation.

**NON-SOLICITATION COVENANT.** For a period of one (1) year from and after termination of Worker's separation from Sandhills Home Care, Worker will not solicit or attempt to procure the customers, accounts, or business that are a part of the book of business of Sandhills Home Care at the date of Worker's separation from Sandhills Home Care. Worker further agrees for a period of one (1) year from and after Worker's separation not to solicit any prospective customer whom Worker or Sandhills Home Care (or its agents) has solicited within the six months immediately preceding separation.

Further, for a period of one (1) year after Worker's separation from Sandhills Home Care, Worker will not directly or indirectly solicit, induce, or attempt to induce any Worker of Sandhills Home Care to terminate his or her employment with Sandhills Home Care.

5.     Defendants Mary Jacobs, Casey Locklear, and Andrianna Emmanuel are former employees of Plaintiff. Mary Jacobs, Casey Locklear, and Andrianna Emmanuel executed the At-Will Agreement at the time they were hired by Plaintiff.[10]

6.     Defendants Shanita Harris, Condola Carbough, Moesha Holt, Kortney Jacobs, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue are former employees of Plaintiff, who executed the Non-Compete Agreement at the time they were hired (collectively, the individual Defendants other than Companion Defendants, in any combination, are referred to as the "Former Employee Defendants").[11]

7.     Plaintiff employed Mary Jacobs as an office manager, and Shanita Harris as a manager in training.[12] Mary Jacobs and Shanita Harris had access to Plaintiff's confidential information regarding Plaintiff's customers and employees including "which [ ] employee was servicing each of the Plaintiff's customers" and the services Plaintiff was providing to its customers.[13]

8.     Plaintiff employed Kourtney Jacobs, Casey Locklear, Shanita Harris, Condola Carbough, Moesha Holt, Jennifer Knight, Natalie Locklear, Summer McLaughlin, Joanna Mishue, and Adrianna Emmanuel as Certified Nursing Assistants or Patient Care Aides. Each of these individuals provided home health care services to Plaintiff's customers.[14]

9.     Plaintiff alleges that in or around October 2015, Mary Jacobs and Shanita Harris conspired with Companion and Graham to solicit Plaintiff's employees to leave employment with Plaintiff and become employed with Companion.[15] Plaintiff alleges that Former Employee Defendants terminated employment with Plaintiff, became employed by

---

[10] Am. Compl. ¶¶ 22-24.
[11] *Id.* at ¶¶ 25-27, 29-32.
[12] *Id.* at ¶¶ 22, 25.
[13] *Id.*
[14] *Id.* at ¶¶ 23-32.
[15] Am. Compl. ¶¶ 33-39.

Companion, and convinced the customers they serviced to switch providers from Plaintiff to Companion in a "plan or scheme to destroy the Plaintiff's business."[16] Plaintiff alleges that the employees were successful in soliciting their customers because each "had a close personal and professional relationship with Plaintiff's customers."[17] Plaintiff further alleges that "Defendants Graham and Companion were aware of the existence and terms of the individual Defendants' employment contracts with the Plaintiff and consciously and knowingly encouraged the individual Defendants to breach their contracts."[18]

10. Plaintiff subsequently sent letters to Graham seeking to determine whether the Former Employee Defendants had gone to work for Companion, but received no response.[19] Plaintiff also sent letters to the Former Employee Defendants asking them if they had gone to work for Companion "in violation of their employment agreements Defendants did not respond to Plaintiff's letters.[20] Former Employee Defendants did not respond to the letters.

11. On December 31, 2015, Plaintiff filed a Verified Complaint and Prayer for Injunctive Relief, and on February 24, 2016 Plaintiff filed an Amended Verified Complaint and Prayer for Injunctive Relief (the "Amended Complaint").[21] The Amended Complaint made claims for breach of contract, tortious interference with contract, unfair and deceptive trade practices, misappropriation of trade secrets, breach of fiduciary duty, and conspiracy against the various Defendants, and sought a preliminary injunction against the Defendants. Counsel subsequently made appearances on behalf of Companion and Graham, and on behalf

---

[16] *Id.* at ¶¶ 38-40.
[17] *Id.* at ¶ 35.
[18] *Id.* at ¶ 41.
[19] *Id.* at ¶¶ 45-47, Exhs. L-M.
[20] *Id.* at ¶¶ 48-49, Exh. N.
[21] Plaintiff properly served all of the Defendants except Andrianna Emanuel with the Summons and the Complaint and the Amended Complaint. Accordingly, Emanuel is not a party to this lawsuit.

of Mary Jacobs, Shanita Harris and Kourtney Jacobs. Casey Locklear, Condola Carbough, Moesha Holt, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue have not appeared in the case.

12. On March 21, 2016, the Court held a properly noticed hearing on Plaintiff's Motion for Preliminary Injunction. Casey Locklear, Condola Carbough, Moesha Holt, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue did not appear at the hearing. On March 23, 2016, the Court entered a Consent Preliminary Injunction against the Moving Defendants prohibiting them from soliciting Plaintiff's customers and from inducing Plaintiff's employees to terminate employment. On March 29, 2016, the Court entered a Preliminary Injunction against Casey Locklear, Condola Carbough, Moesha Holt, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue.

13. On March 11, 2016, Companion and Graham filed their Motion to Dismiss and Answer, and on March 28, 2016, Mary Jacobs, Shanita Harris and Kourtney Jacobs filed their Motions to Dismiss and Answers. The Motions have been fully briefed and are now ripe for determination.

## DISCUSSION

14. Moving Defendants seek to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When ruling on a 12(b)(6) motion to dismiss, the Court must determine "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any theory." *Benton v. W. H. Weaver Constr. Co.*, 28 N.C. App. 91, 95, 220 S.E.2d 417, 420 (1975). Such a motion should be granted only when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). The Court treats the well-pleaded allegations in a complaint as true

and admitted in analyzing a 12(b)(6) motion to dismiss. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). While facts and permissible inferences set forth in the complaint are analyzed in a light most favorable to the plaintiff, un-warranted conclusions of law or deductions of fact will not be deemed admitted. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). The court may not consider material that not is mentioned, contained, or attached in or to the Complaint, or else this rule 12(b)(6) motion will be converted into a Rule 56 motion for summary judgment. *Better Bus. Forms & Prods. v. Craver*, 2007 NCBC LEXIS 34, *8 (N.C. Super. Ct. 2007).

15. Plaintiff makes six separate claims for breach of contract against the Former Employee Defendants based upon the distinct obligations in the agreements regarding (a) restrictions on future employment and competition (the "Non-competition Restrictions"), (b) restrictions on solicitation of Plaintiff's clients (the "Non-solicitation Restrictions"), and (c) restrictions on the inducement of Plaintiff's employees to leave employment with Plaintiff (the "Non-inducement Restrictions"). Moving Defendants seek dismissal of all of the claims for breach of contract. The Court will address the Non-competition Restrictions, the Non-solicitation Restrictions, and the Non-inducement Restrictions in turn.

### A. The Non-competition Restrictions.

16. Plaintiff alleges Mary Jacobs, Casey Locklear, and Andrianna Emmanuel each breached the Non-competition Restrictions of the At-Will Agreement (Count I), and that Shanita Harris, Condola Carbough, Moesha Holt, Kortney Jacobs, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue each breached the Non-competition Restrictions of the Non-Compete Agreement (Count II). Moving Defendants argue that the unreasonably broad scope of the time, territory, and future employment restrictions render

the underlying employment contracts unenforceable.[22]  Plaintiff contends that the restrictive covenants are reasonable and enforceable.

17.     North Carolina courts will enforce a covenant not to compete if it is: "(1) in writing; (2) reasonable as to [the] terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." *Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990); *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 649-50, 370 S.E.2d 375, 380 (1988). The reasonableness of a non-competition covenant is a matter of law for the court to decide. *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655, 670 S.E.2d 321, 327 (2009).  The party seeking enforcement of a restrictive covenant has the burden of proving its reasonableness. *Id*.

18.     Since time and territory each affect the reasonableness of a restrictive covenant, the Court must review them in tandem. *Farr Associates, Inc. v. Baskin*, 138 N.C. App. 276, 280, 530 S.E.2d 878, 881 (2000) ("A longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*.").  In the absence of an express geographic territory restriction, a court can enforce a restriction prohibiting a former employee from soliciting customers or clients. *Whittaker Gen. Med. Corp.*, 324 N.C. at 528-29, 379 S.E.2d at 828 (relying on *Kuykendall* and enforcing a noncompetition agreement that included client-based restrictions for 24 months without any expressly defined geographical territory other than the employee's sales territory at the time of termination); *Triangle Leasing Co.*, 327 N.C. at 229, 393 S.E.2d at 857-58 (enforcing noncompetition agreement restricting an employee for 24 months from soliciting employer clients in areas in which the employer operates without any expressly defined geographical territory).  No matter how the

---

[22] Companion Br. Supp. of Mot. to Dis. p. 5.

territorial restriction is delineated, it can be no greater than is reasonably necessary to protect the legitimate business interests of the employer. *Manpower of Guilford County, Inc. v. Hedgecock*, 42 N.C. App. 515, 521, 257 S.E.2d 109, 114 (1979).

19. The "protection of customer relationships and goodwill against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer," *Kuykendall*, 322 N.C. at 651, 370 S.E.2d at 381, particularly where the nature of the employment brings "the employee in personal contact with patrons or customers of the employer, or enable[s] [the employee] to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 408, 302 S.E.2d 754, 763 (1983); *Harwell Enters., Inc. v. Heim*, 276 N.C. 475, 480, 173 S.E.2d 316, 320 (1970); *Med. Staffing Network, Inc.*, 194 N.C. App. at 656, 670 S.E.2d at 327.

    i.    *The At-Will Agreement*.

20. The Non-competition Restriction in the At-Will Agreement provides as follows:

> (b) Employee hereby covenants and agrees that, for a period of one (1) year following the termination of his/her employment relationship with Employer, for whatever reason, whether voluntary or involuntary, and for cause or no cause, he/she shall not directly or indirectly, on behalf of himself or any other person, company, or entity:

> (i) work for, provide services for, consult with, or otherwise assist any individual or entity who is in the home health or personal care business competing with the Employer. This covenant not to compete shall be limited to any county in North Carolina where Employer is providing services at the time of Employee's separation.

21. Moving Defendants argue that prohibiting the employees subject to the At-Will Agreement from "work[ing] for, provid[ing] services for, consult[ing] with, or otherwise assist[ing]" is overly broad because it effectively prohibits the Former Employee Defendants from obtaining employment with any other company in the home health business in any North Carolina county in which the Plaintiff provides services.

Covenants that restrict an employee from working for in any capacity or providing services of any type to competitors, and are not restricted to prohibiting the employee from performing the same type of work or services, are unreasonable. *Medical Staffing Network, Inc.*, 194 N.C. App. at 656, 670 S.E.2d at 327 ("[R]estrictive covenants are unenforceable where they prohibit the employee from engaging in future work that is distinct from the duties actually performed by the employee."); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508-509, 606 S.E.2d 359, 362-63 (2004) ("Under this covenant James would not merely be prevented from engaging in work similar to that which he did for VisionAIR at VisionAIR competitors; James would be prevented from doing even wholly unrelated work at any firm similar to VisionAIR."); *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 317, 450 S.E.2d 912, 920 (1994) (noting that an overly broad non-competition agreement banning any association with competitors was unreasonable because it would prevent one from working even as a custodian for any "entity" which provided the same services as the former employer).

22. Plaintiff counters that section (b)(i) of the Non-competition Restriction should be read as incorporating the provision of section (b)(ii) that prohibits Former Employee Defendants from "otherwise provid[ing] any services that are similar to or competitive with services offered by Employer." Plaintiff argues that read in this fashion, section (b)(i) only prohibits the Former Employee Defendants providing services that are "similar to or competitive" with the services offered by Plaintiff.[23] Plaintiff's suggested construction, however, does not square with the structure of the covenants. Sections (b)(i) and (b)(ii) are separate restrictions, addressing different subjects, and each section is capable of being interpreted independent of the other's existence. As each provision

[23] Pl.'s Br. Opp. to Companion Mot. to Dismiss pp. 8-9.

stands on its own, the "similar or competitive" language of section (b)(ii) has no relevance

to the Court's interpretation of section (b)(i).  Even if the Court believed the language in

section (b)(ii) created an ambiguity as to the meaning of section (b)(i), such ambiguity

would be  construed against Plaintiff as it was the drafting party. *Reichhold Chems., Inc.

v. Goel*, 146 N.C. App. 137, 153, 555 S.E.2d 281, 291 (2001).

23.     The Court concludes that the Non-competition Restriction in the At-Will

Agreement is overly broad and is unenforceable.  *Clinical Staffing, Inc. v. Worldwide

Travel Staffing*, 60 F. Supp. 3d 618, 625 (E.D.N.C. 2013).  Therefore, Moving Defendants'

Motions to Dismiss Count I of the Amended Complaint should be GRANTED.

ii.     *The Non-Compete Agreement.*

24.     The Non-competition Restriction in the Non-Compete Agreement provides as

follows:

> **NON-COMPETE COVENANT.** Worker will not compete[24] with Sandhills
> Home Care for a period of one (1) year after Worker's separation from Sandhills
> Home Care within the geographical area that defined by a 100 mile radius of
> Sandhills Home Care, LLC, 401 E. Third Street, Ste. 3C, Pembroke, N.C.,
> 28372.
>
> Further, Worker agrees for a period of one (1) year from the date of Worker's
> separation from Sandhills Home Care not to perform any work or services for
> any customer or account for which Sandhills Home Care or its agents,
> including Worker, performed work or services during the six months preceding
> the date of Worker's separation.

25.     Here, the covenant appears to provide two different Non-competition

Restrictions.  The former employee is prohibited for one year from: (a) holding any ownership

interest in, operating, managing, or advising a home health aide business or any other

business that performs substantially the same services as Sandhills within 100 miles of

---

[24] The Non-Compete Agreement defines the word "compete"as "holding any ownership interest in, operating, managing, or advising a home health aide business or any other business that performs substantially the same services as Sandhills Home Care."  Non-Compete Agreement, p. 2.

Pembroke, North Carolina, and; (b) performing work or services for any of Sandhills' customers for whom Sandhills provided services during the six months prior to the employee's separation.

26.     Moving Defendants claim the 100-mile restriction is unenforceable because it is greater than reasonably necessary to secure the protection of the business or goodwill of Sandhills.  In determining the reasonableness of a territorial restriction, the Court considers: (1) the area of the restriction, (2) the area assigned to the employee, (3) the area where the employee actually worked or was subject to work, (4) the area in which the employer operated, (5) the nature of the business involved, and (6) the nature of the employee's duty and his knowledge of the employer's business operation.  *Clyde Rudd & Associates, Inc. v. Taylor*, 29 N.C. App. 679, 684, 225 S.E.2d 602, 605 (1976).

27.     The Amended Complaint contains specific allegations that Plaintiff provided home care to customers "in and around Robeson County, North Carolina,"[25] and that "Plaintiff, through its employees, provides home care to its customers within a radius of approximately 100 miles from Pembroke, North Carolina."[26]  The Amended Complaint does not allege the specific locations in or around Pembroke in which the Former Employee Defendants had patients or performed services for Sandhills, or that the Former Employee Defendants had contact with patients other than their own.   Nevertheless, Plaintiff has alleged that it provides services to patients within 100 miles of Pembroke, North Carolina. Taking that allegations as true for purposes of this motion, the Court cannot conclude that the 100 mile geographic restriction in the first paragraph of the covenant is unreasonable at this stage of the proceeding. *See Kinston Med. Specialists, P.A. v. Bundle*, 2015 NCBC LEXIS 48,*9 (N.C. Super. Ct. 2015) (holding that the restriction of working in Lenoir, Duplin, Jones,

---

[25] Am. Compl. ¶ 17
[26] *Id.* at ¶ 20.

Greene, Onslow, and parts of Wayne County was sufficiently supported by Complaint alleging that the plaintiff's medical practice encompassed "Eastern North Carolina" to survive a 12(b)(6) motion to dismiss).

28.     Defining "compete" as including "holding any ownership interest in" or "advising" any home health business, however, is a different matter.  The phrase "holding any ownership interest in," read literally, would prohibit the employee from owning shares of a mutual fund that had a tiny holding in a publicly-traded home health care company.  The word "advising" is not defined in the Non-Compete Agreement, but also is broad enough to sweep within it all sorts of employment and other services that would not impinge on Plaintiff's interests in any way.  For example, an employee might become employed by an interior design or decorating business that advises a home health care provider on decorating its corporate offices, or a technology company providing consulting services to a home health care provider regarding its computer network needs.  Plaintiff would not be protecting its legitimate interests by preventing the Former Employee Defendants from holding such positions, even if these positions brought them into contact with Plaintiff's competitors.[27] "[W]here an employee has [ ] customer contact, the employer has a legitimate business interest in preventing the employee from moving into an identical position with identical duties with a competitor vis-à-vis such customers." *Clinical Staffing, Inc.*, 60 F. Supp. 3d at 624; *see also Medical Staffing Network, Inc.*, 194 N.C. App. at 656, 670 S.E.2d at 327 ("[R]estrictive covenants are unenforceable where they prohibit the employee from engaging in future work that is distinct from the duties actually performed by the employee.");

---

[27] In determining whether a restrictive covenant protects the legitimate interests of an employer, Courts must also consider ""the nature of the employee's duty and his knowledge of the employer's business operation." *Hartman*, 117 N.C. App. at 312, 450 S.E.2d at 917; *Okuma Am. Corp. v. , Bowers*, 181 N.C. App. 85, 91-92, 638 S.E.2d 617, 621-22 (2007) (Restrictive covenant prohibiting vice president from working for direct competitors in broad geographic region could be reasonable).

*Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920 (non-competition agreement banning any association with competitors was unreasonable because it would prevent one from working even as a custodian for any "entity" which provided the same services as the former employer). Accordingly, although the geographic region might be reasonable, Plaintiff has not alleged any facts that would support the broad prohibition on the Former Employee Defendants holding any type of ownership interest in or advising Plaintiff's competitors in fields unrelated to the former employee's work for Plaintiff.

29. The second paragraph of the Non-compete Restriction prohibits the former employee, for one year, from performing "any work or services for any customer or account" which Sandhills had serviced in the six months prior to termination of employment. Nowhere in the Non-Compete Agreement is the term "work or services" defined, and it is not expressly restricted to providing nursing or home care services. This restriction prohibits the former employee from providing *any type of service* for any of Plaintiff's clients or customers, regardless of whether or not the former employee had any contact with that customer. In *Clinical Staffing, Inc. v. Worldwide Travel Staffing*, the court refused to enforce a nearly identical restriction on the plaintiff's former nursing employees, holding:

> As written, the covenant not to compete prohibits the former [] employees from providing any service of any kind to "any [] client or individual . . . for a period of (6) six months from [the employee's] termination date." [D.E. 22-1]. Moreover, the restriction applies not only to those clients or individuals who have interacted with the former [] employee, but to any [] client anywhere in the world. Thus, for example, a [] employee who signed this non-competition provision could not provide food preparation services, custodial services, or secretarial services to any "[] client or individual" anywhere in the world for six months. As written, the non-competition provision is overbroad as to terms and unenforceable.

60 F. Supp. 3d at 625 (citations omitted). Such a broad ban is an unreasonable and unenforceable restriction that fails to narrowly protect Sandhill's legitimate business interests.

30.     The Court concludes that the Non-competition Restriction in the Non-Compete Agreement is unenforceable, and that Moving Defendants' Motions to Dismiss Count II of the Amended Complaint should be GRANTED.

## B. Non-solicitation Restrictions.

### i. *The Non-Compete Agreement*.

31.     Plaintiff alleges Shanita Harris, Condola Carbough, Moesha Holt, Kortney Jacobs, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue violated the Non-solicitation Restriction in the Non-Compete Agreement (Count III).  The Non-solicitation Restriction of the Non-Compete Agreement appears in the first paragraph of section 2, entitled "Non-Solicitation Covenant", and provides as follows:

> For a period of one (1) year from and after termination of Worker's separation from Sandhills Home Care, Worker will not solicit or attempt to procure the customers, accounts, or business that are a part of the book of business of Sandhills Home Care at the date of Worker's separation from Sandhills Home Care. Worker further agrees for a period of one (1) year from and after Worker's separation not to solicit any prospective customer whom Worker or Sandhills Home Care (or its agents) has solicited within the six months immediately preceding separation.

Moving Defendants argue the Non-solicitation Restriction is unenforceable because it is not tied to a particular geographic region, and because it is overly broad in prohibiting the soliciting of customers and prospective customers with whom the Former Employee Defendants did not have personal contact.[28]

32.     Like non-competition provisions, valid non-solicitation provisions must be: (1) in writing, (2) entered into at the time and as part of the contract of employment, (3) based on valuable consideration, (4) reasonable both as to the time and territory embraced in the restrictions, (5) fair to the parties, and (6) not against public policy. *Aeroflow Inc. v. Arias*,

---

[28] Companion Br. Supp. of Mot. to Dismiss p. 5.

2011 NCBC LEXIS 21, *24 (N.C. Super. Ct. 2011). Although their elements are identical, North Carolina courts are more willing to enforce non-solicitation provisions targeted to the former employer's customers or prospective customers than provisions prohibiting entirely the former employee from working for certain employers or in certain regions. *See Kuykendall*, 322 N.C. at 658, 370 S.E.2d at 385 (1998).

33.     Preliminarily, Moving Defendants' argument that the Non-solicitation Restriction cannot be enforced because it does not apply to a particular geographic region fails. The North Carolina Court of Appeals has expressly rejected this argument. *Farr Assocs., Inc.*, 138 N.C. App. at 281, 530 S.E.2d at 882. Rather, North Carolina's courts will enforce a covenant prohibiting a former employee from soliciting his former employer's customers even when not tied to a specific geographic region where "the terms and conditions of this contract clause were reasonably necessary to protect the employer's legitimate business interests." *Triangle Leasing Co.*, 327 N.C. at 229, 393 S.E.2d at 857 ; *see also Wade S. Dunbar Ins. Agency, Inc. v. Barber,* 147 N.C. App. 463, 469, 556 S.E.2d 331, 335 (2001); *Superior Performers, Inc. v. Meaike*, 2014 U.S. Dist. LEXIS 50302 *32-33 (M.D.N.C. April 11, 2014) ("The covenant in this case utilizes an employee-based restriction, rather than a geographic restriction, which North Carolina courts have also upheld when the overall effect is reasonable."). A customer-based restriction on solicitation is analyzed in much the same manner as a geographic restriction, taking into consideration many of the same factors and, particularly, the time period of the restriction. *Wade S. Dunbar Ins. Agency,* 147 N.C. App. at 469, 556 S.E.2d 335; *Farr Assocs.*, 138 N.C. App. at 281-82, 530 S.E.2d at 882.

34.     The courts have differed, however, as to whether a non-solicitation covenant can prohibit contact with all of a former employer's customers, or just those customers or prospective customers with whom the employee had personal contact. *Compare Farr Assoc.*, 138 N.C. App. 276, 282, 530 S.E.2d 878, 882 ("[A] client-based limitation cannot extend

beyond contacts made during the period of the employee's employment")*with Triangle Leasing*, 327 N.C. at 229, 393 S.E.2d at 857 (enforcing restrictive covenant prohibiting former employee from "soliciting the business of plaintiff's known customers in areas in which the company operates") *and Wade S. Dunbar Ins. Agency,* 147 N.C. App. 463, 469, 556 S.E.2d 331, 335 (covenant "restrict[ing] defendant, for two years, from soliciting any customers having an active account with plaintiff at the time of his termination or prospective customer whom defendant himself had solicited within the six months immediately preceding his termination" enforceable).

35.    The Non-solicitation Restriction in the Non-Compete Agreement prohibits the Former Employee Defendants, for one year, from soliciting "the customers, accounts, or business that are a part of the book of business of Sandhills Home Care at the date of Worker's separation," and from soliciting prospective customers that Sandhills or the former employee had solicited within the six months immediately preceding termination of employment.  Accordingly, the Former Employee Defendants are restricted from soliciting any of Plaintiff's customers, whether or not the employee serviced or had contact with the customer.  Plaintiff provides home health care only "to customers in and around Robeson County, North Carolina" within approximately 100 miles of Pembroke, North Carolina.  These allegations suggest that Plaintiff has a relatively small and easily identified set of customers.  At this very early stage of the case and based upon the pleadings alone, the Court cannot conclude that the Non-solicitation Restriction in the Non-Compete Agreement is unreasonable simply because it prohibits the Former Employee Defendants from soliciting customers with whom they may not have had personal contact during employment.

36.    The Non-solicitation Restriction also prohibits the Former Employee Defendants from soliciting "prospective customers" that they personally, or that Plaintiff, solicited for services during the six months prior to the employee's termination.  This

restriction is too broad, particularly in light of the fact that "prospective customers" solicited by Plaintiff, but not personally by the Former Employee Defendants, are much less easily identified. The alleged reach of Plaintiff's operations means that the Former Employee Defendants would be restricted from attempting to solicit home health care services from individuals whom Plaintiff itself was unable to secure as customers, and who live far outside of the area the individual former employee serviced. In *Hejl v. Hood, Hargett & Assocs.*, 196 N.C. App. 299, 307, 674 S.E.2d 425, 430, (2009), the Court of Appeals held a similar restriction to be unreasonable and unenforceable, concluding that:

> [T]he Agreement's restrictive covenant reaches not only current and former customers of Defendant, but also includes any person, firm, or entity to whom Defendant had merely quoted a product or service. Defendant's attempt to prevent Plaintiff from obtaining clients where Defendant had failed to do so, is an impermissible restraint on Plaintiff. Non-compete agreements may be directed at protecting a legitimate business interest. But in the case before us, where the Agreement reaches not only clients, but potential clients, and extends to areas where Plaintiff had no connections or personal knowledge of customers, the Agreement is unreasonable.

The Court concludes that Plaintiff has failed to allege a legitimate business interest in restricting the Former Employee Defendants from calling on prospective customers who they did not personally solicit.

37. While the language prohibiting the solicitation of prospective customers is unreasonably broad, it does not render the entire Non-solicitation Restriction unenforceable. Rather, that provision is a separate and divisible obligation contained in a separate sentence of the covenant, and is not necessary to a logical and unambiguous interpretation of the obligation in the first sentence prohibiting the solicitation of Plaintiff's actual customers.[29] Under the "strict blue pencil doctrine," North Carolina courts may specifically enforce

---

[29] While the prohibition on soliciting Plaintiff's prospective customers the former employee personally solicited during their final six months of employment arguably would be reasonable, the Court concludes that this obligation cannot be separated from the remainder of the second sentence.

divisible or separable sections of restrictive covenants while striking portions that are unenforceable. *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 2016 N.C. LEXIS 177, *6, 784 S.E.2d 457, 460 (N.C. 2016). Accordingly, the Court will strike the second sentence of the Non-solicitation Restriction that reads "Worker further agrees for a period of one (1) year from and after Worker's separation not to solicit any prospective customer whom Worker or Sandhills Home Care (or its agents) has solicited within the six months immediately preceding separation." *Superior Performers, Inc.*, 2014 US Dist. LEXIS 50302 *39 (applying blue-pencil doctrine and holding "[a]lthough it is not separated off by number or in a different clause, the language can readily be struck through and the rest of the restrictive covenant still makes sense and stands on its own"). Accordingly, the Moving Defendants' Motions to Dismiss Count III of the Amended Complaint should be DENIED in part in that the Court concludes that the first sentence of the Non-solicitation Restriction is enforceable, and the second sentence of the Non-solicitation Restriction is not enforceable but can be struck from the covenant. Accordingly, the Moving Defendants' Motions to Dismiss Count III of the Amended Complaint should be GRANTED with regard to the second sentence of the Non-solicitation Restriction.

       ii.     *The At-Will Agreement*.

38.     Plaintiff alleges Mary Jacobs, Casey Locklear, and Andrianna Emmanuel each breached the Non-solicitation Restriction in the At-Will Agreement (Count IV). The Non-solicitation Restriction in the At-Will Agreement provides that for a period of one year following the termination of employment, the Former Employee Defendants cannot:

> (ii) solicit the sale of, sell, or otherwise provide any services that are similar to or competitive with services offered by Employer, to any person, company or entity which was a client or a potential client of Employer for such services and with whom Employee had direct contact with during the two (2) years prior to Employee's separation;

(iii) solicit, attempt to persuade or communicate with any client of Employer or any potential client of Employer with whom Employee had direct contact with during the two (2) years prior to Employee's separation of employment with Employer, to discontinue, limit or otherwise interfere with business relationship between Employer and said client(s).

39. Moving Defendants argue that the time period of these provisions, in conjunction with the client-based restriction, make them unreasonable. Moving Defendants base this argument on the addition of the two year "look-back" period to the one year post-termination period, which creates a three year restriction on the solicitation of all Plaintiff's customers. "When a non-compete agreement reaches back to include clients of the employer during some period in the past, that look-back period must be added to the restrictive period to determine the real scope of the time limitation." *Farr Assocs., Inc.*, 138 N.C. App. at 280, 530 S.E.2d at 881; *Wachovia Ins. Servs. v. McGuirt*, 2006 NCBC LEXIS 25, *24 (N.C. Super. Ct. 2006). North Carolina courts have held that the time restriction of a non-solicitation provision restricting communication with an entire customer base should include the look-back period when the look-back period also applies to the entire customer base. *Farr Assocs., Inc.*, 138 N.C. App. at 281, 530 S.E.2d at 882; *Evo Corp. v. Poling*, 2015 NCBC LEXIS 83, *14 (N.C. Super. Ct. 2015); *Investors Trust Co. v. Whitlock*, 2015 NCBC LEXIS 46, *20 (N.C. Super. Ct. 2015). In *McGuirt*, however, this Court chose not to consider a covenant tailored to capture only those clients the employee "serviced" during the two years preceding his termination as a look-back period that added time to a non-solicitation restriction applicable to "any business, clients, customers or prospects of [the employer]." 2006 NCBC LEXIS at *27 ("Unlike the 'look back' provision in *Farr*, the language here does not attempt to bring within its ambit all of [employer's] clients within the two years preceding McGuirt's termination.").

40. Here, the non-solicitation provision applies only to customers and potential customers with whom the former employee had "direct contact" during the two years prior to their termination of employment. Moving Defendants argue that restricting solicitation of potential clients with whom a former employee had "direct contact" is much broader than restricting solicitation of clients "serviced" by the employee. Moving Defendants contend that "direct contact" could include potential clients with whom Former Employee Defendants "talked to . . . on the phone, but did not actually provide care to," and that undefined term "potential clients" has "an almost universal application."[30] Moving Defendants, therefore, urge the Court to interpret the non-solicitation provision as an ultra-broad three year restriction on the solicitation of all Plaintiff's current clients in addition to any of Plaintiff's clients or potential clients from the preceding two years.

41. The Court declines to apply such a sweeping interpretation to the restriction. Plaintiff alleges that its business interests need protection because its home health care providers have developed close, personal relationships with the patients they service. The allegations also establish that Plaintiff's employees service, and develop these deep relationships with, a single client or a very small number of clients. In fact, Plaintiff alleges that all but one of the Former Employee Defendants in this case serviced just a single client. Even including those customers and potential clients with whom the Former Employee Defendants only had a limited "direct contact" does not expand the reach of the restriction beyond that which is reasonably necessary. Since the two year look-back provision is tailored to capture only those clients with whom the Former Employee Defendants had direct contact, the provision is sufficiently narrow to prevent

[30] Companion's Reply Br. p. 4.

any potential loss of customers without unreasonably restricting the former employee's ability to work in the home health care field. *Evo Corp.*, 2015 NCBC LEXIS 83 at *14 (N.C. Super. Ct. 2015) (holding that when the employee's knowledge of customers is the primary concern, the territory of restrictive covenant should be restricted to those areas in which the employee made contacts).[31]  The Court concludes that the Non-solicitation Restriction in the At-Will Agreement is reasonable and enforceable, and that the Moving Defendants' Motions to Dismiss Count IV of the Amended Complaint should be DENIED.

### C.  Non-inducement Restrictions.

42.     Plaintiff alleges Shanita Harris, Condola Carbough, Moesha Holt, Kortney Jacobs, Jennifer Knight, Natalie Locklear, Summer McLaughlin and Joanna Mishue each breached the Non-Compete Agreement by violating its Non-inducement Restrictions (Count V), and Mary Jacobs, Casey Locklear, and Andrianna Emmanuel each breached the At-Will Agreement by violating its Non-inducement Restrictions (Count VI).  The Non-inducement Restrictions are contracts "in restraint of trade" that the Court must carefully scrutinize for reasonableness. *See Kuykendall*, 322 N.C. at 658, 370 S.E.2d at 385 (1998).  Like non-solicitation of customer restrictions, non-inducement restrictions are more easily enforced than non-competition restrictions. *Id.*  Courts in North Carolina have recognized that reasonable restrictions on a former employee's right to solicit an employer's current employees are enforceable. *Kennedy v. Kennedy*, 160 N.C. App. 1, 11, 584 S.E.2d 328, 335 (2003) ("[T]he covenant prohibiting Carroll from soliciting and hiring plaintiff's former employees for the three-year period does not violate public policy."); *Superior Performers,*

---

[31] Even if the Court were to interpret the Non-solicitation Restriction as encompassing a three year period, that period is well within the outer limit of restrictive covenant enforceability. *See Eng'g Assocs., Inc. v. Pankow*, 268 N.C. 137, 139, 150 S.E.2d 56, 58 (1966) (holding that a five-year restrictive covenant was reasonable).

*Inc.*, 2014 U.S. Dist. LEXIS 50302 at *33-36 (Two year restriction on soliciting former employer's current employees reasonable).

    i.   *The Non-Compete Agreement*.

43.    The Non-inducement Restriction in the Non-Compete Agreement[32] appears in the second paragraph of section 2, entitled "Non-Solicitation Covenant", and provides as follows:

> [F]or a period of one (1) year after Worker's separation from Sandhills Home Care, Worker will not directly or indirectly solicit, induce, or attempt to induce any Worker of Sandhills Home Care to terminate his or her employment with Sandhills Home Care.

44.    A restriction on solicitation of a former employer's employees is subject to the same requirements as other restrictive covenants. *Superior Performers, Inc.*, 2014 U.S. Dist. LEXIS 50302 at *18. Here, the Non-inducement Restriction is in writing and was based on valuable consideration. The Court also concludes that Plaintiff has alleged a protectable business interest. *Kennedy,* 160 N.C. App. at 12, 584 S.E.2d at 335 (Dentistry practice had legitimate interest in protecting its current staff from solicitation by former employee where current employees had long-term, personal relationships with practice's patients). Accordingly, the only issues for determination are whether the Non-inducement Restriction is reasonable and whether it violates public policy. In determining whether a restrictive covenant violates public policy, the Court must consider whether an employer's right to protect itself from competition results in an undue hardship on employees that is greater than necessary to protect the interests of the employer. *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 510, 740 S.E.2d 923, 927 (2013).

---

[32] Defendants have not addressed any specific argument in their briefs towards the Non-inducement Restriction, but argue instead that the entire NON-SOLICITATION COVENANT is unenforceable. Nevertheless, the Court will review the restriction.

45. The one year prohibition on inducing Plaintiff's current employees to terminate their employment with Plaintiff imposed by the Non-Compete Agreement reasonably protects Plaintiff's interests and does not result in an unduly great hardship on the Former Employee Defendants. The Court concludes that the Non-inducement Restriction in the Non-Compete Agreement is reasonable and enforceable, and that the Moving Defendants' Motions to Dismiss Count V of the Amended Complaint should be DENIED.

ii. *The At-Will Agreement*.

46. The Non-inducement Restriction in the At-Will Agreement provides as follows:

> **NON-INDUCEMENT.** Employee understands that any attempt on the part of Employee to induce others to leave Employer's employ, or any effort by Employee to interfere with Employer's relationship with other employees would be harmful and damaging to Employer. Therefore, Employee expressly agrees that during the term of employment, and for a period of one (1) year thereafter, he/she will not in any way, directly or indirectly, (1) induce or attempt to induce any employee to quit employment with Employer; (2) interfere or disrupt Employer's relations with other employees; (3) solicit or entice any person employed with Employer. In the event that Employee does employ an employee of Employer in violation of this Agreement, Employer shall have the right to seek and obtain a Temporary Restraining Order, *ex parte*, and other injunctive or equitable relief as is necessary to protect its interests.

47. Moving Defendants contend that the Non-inducement Restriction should not be enforced, and Plaintiff's claim for breach dismissed, because it violates North Carolina public policy. Defendants argue that the prohibiting the Former Employee Defendants from inducing co-workers to terminate employment with Plaintiff and from "interfere[ing] or disrupt[ing]" Plaintiff's relationship with co-workers violates a worker's right to engage in concerted activity under the National Labor Relations Act, 29 U.S.C. § 157, and suppresses competition within North Carolina's home healthcare market, in violation of G.S. § 75-1.[33] Defendants, however, provide no case law authority for, and make no substantial argument

---

[33] Companion Br. Supp. of Mot. to Dismiss pp. 8-9.

regarding, either proposition. Likewise, Plaintiff devotes four sentences of its brief to responding to Defendants' contention, and cites to no authority in opposition. Defendants' argument that the Non-inducement Restriction violates G.S. § 75-1 is significantly undermined by the fact that, as noted above, North Carolina's appellate courts have held that such restrictions on inducing a former employer's employees can be enforceable. In addition, Defendant has cited to no source for the contention that there is a North Carolina public policy in favor of protecting employee concerted activity. Accordingly, at this stage of the action, the Court concludes that Defendants' motions to dismiss Count VI should be DENIED.

### D. Enforceability of Mary Jacob's Restrictive Covenants.

48. Defendant Mary Jacobs claims that she began working for Plaintiff six months before Plaintiff made her sign the At-Will Agreement without providing her any new consideration. Restrictive covenants agreed upon and entered into after the execution of one's employment agreement are invalid if not supported by new consideration independent of continued employment. *Young v. Mastrom, Inc.*, 99 N.C. App. 120, 123, 392 S.E.2d 446, 448 (1990).

49. In reviewing a 12(b)(6) Motion to Dismiss, the Court is to liberally construe whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The Amended Complaint alleges that Plaintiff hired Mary Jacobs "in the capacity as an office manager in January, 2015." In response, Mary Jacobs has submitted an affidavit stating that she was initially employed by Plaintiff around July 28, 2014. Because the affidavit contains information outside of the pleadings, the Court chooses to exclude the affidavit as provided for in Rule 12(b). Treating the allegations of the Amended Complaint as true, Plaintiff has alleged that Mary Jacobs entered into the restrictive covenants at the time she was hired as an office manager. Since Plaintiff alleges that the covenants are supported by the consideration of initial employment,

Mary Jacobs' Motion to Dismiss the breach of contract claims against her for lack of consideration should be DENIED.

### E. Tortious Interference.

50.    In Count VII of Verified Amended Complaint, Plaintiff alleges that Defendants tortiously interfered with Plaintiff's contracts with it customers by inducing them to "terminate their contractual relationship with the Plaintiff and to hire the Defendant Companion" to provide their home health care.[34]  In Count VIII, Plaintiff alleges that Mary Jacobs, Harris, Companion and Graham interfered with Plaintiff's contracts by "intentionally induc[ing] the Plaintiff's employees to terminate their contractual relationship with Plaintiff and to obtain employment with Companion."[35]  In order to prevail on a claim for tortious interference with contract, a plaintiff must establish the following: (1) a valid contract existed between the plaintiff and a third party that conferred upon plaintiff contractual right against the third party; (2) the defendant was aware of the contract; (3) the defendant intentionally induced the third party not to comply with the contract; (4) the defendant did so without justification and (5) actual injury to plaintiff resulted.  *Kuykendall*, 322 N.C. at 661, 370 S.E.2d at 387 (1988); *White v. Cross Sales & Eng'g Co.*, 177 N.C. App. 765, 768–69, 629 S.E.2d 898, 901 (2006).  "Interference with a contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC,* 784 S.E.2d 457, 462, 2016 N.C. LEXIS 177, *13 (N.C. 2016) (internal quotations omitted).

i.    *Tortious Interference with Customer Contracts*.

51.    Plaintiff alleges that Defendants interfered with "valid contracts and business relationship (*sic*) [ ] between the Plaintiff and its customers conferring upon the Plaintiff a

---

[34] Am. Compl. ¶ 79.
[35] *Id.* ¶ 84.

contractual right to receive payment in consideration for providing home care services to the Plaintiff's customers."[36]  Defendants argue that Plaintiff's claim must fail because Plaintiff has not identified specific customers with whom Defendants interfered, because Plaintiff does not allege that it had contracts "to provide its patients with home health care for a definite period of time," and because Plaintiff did not allege Defendants prevented Plaintiff from receiving any payments it was due from its clients.[37]  Plaintiff does not expressly address this claim in its brief.

52.     While specificity in pleading probably is the better course, Defendants have pointed the Court to no authority that would support the position that Plaintiff is required to allege the particular clients with whom Defendants interfered in order to survive a motion to dismiss.  In addition, the fact that the client relationships at issue may have been terminable at-will, and not for a definite term, is not fatal to the claim for tortious interference at this early stage of the case. *S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, *22-23 (N.C. Super. Ct. 2015) (fact that customer relationships with which the defendant allegedly interfered were at will was not basis for dismissal; citing *Childress v. Abeles*, 240 N.C. 667, 678, 84 S.E.2d 176, 184 (1954)).  Finally, although Plaintiff does not allege that Defendants interfered with payments it was due from its customers, the allegations that Plaintiff had existing customer relationships with which Defendants interfered is sufficient at this stage to survive dismissal of the claim.  Accordingly, the Court concludes and that the Moving Defendants' Motions to Dismiss Count VII of the Amended Complaint should be DENIED.

---

[36] Am. Compl. ¶ 77.
[37] Companion's Br. Supp. Mot. to Dismiss pp. 13-14.

ii.        *Tortious Interference with Employee Contracts*.

53.     Plaintiff alleges that it had contracts with the Former Employee Defendants in which they agreed "not to engage in certain conduct as set forth in the contracts" and that Companion, Graham, Mary Jacobs and Harris, "intentionally induced Plaintiff's employees to terminate their contractual relationship with Plaintiff to obtain employment with Companion."[38]   Plaintiff alleges that the Defendants engaged in this conduct "without justification" in a "malicious and blatant attempt to destroy the Plaintiff's business."[39] Defendants argue that Plaintiff's claim should be dismissed because each employee's at-will employment status with Plaintiff precludes a valid claim of tortious interference with their employment contracts, because Plaintiff's failed to allege that the Companion, Graham, Mary Jacobs, and Harris had knowledge of the restrictive covenants, and that Plaintiff has failed to allege that Defendants lacked a legitimate business purpose for interfering with the employment agreements.

54.     Moving Defendants correctly point out that an at-will employee may end her employment at any time for any reason and that such an agreement is terminable, with or without cause, at the will of either party.  Our supreme court, however, has held that a claim for interference with contract can be based on an at-will employment relationship. *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (N.C. 1988) ("The mere fact that the plaintiff's employment contracts with the employees in question were terminable at will does not provide the defendant a defense to the plaintiff's claim for tortious interference.") (citing *Childress*, 240 N.C. at 678, 84 S.E. 2d at 184).

55.     In addition, Plaintiff has alleged that the former employees had enforceable agreements restricting them from competing and soliciting customers following termination

---

[38] Am. Compl. ¶¶ 82, 84.
[39] *Id.* at ¶ 85.

of employment. Such agreements would support a claim for intentional interference with contract even if the employee was at-will. *Hooks*, 322 N.C. at 221, 367 S.E.2d at 650 (finding that the plaintiff could pursue claim for tortious interference with contract when at-will employee had a non-compete covenant). Moving Defendants' contention that Plaintiff did not allege knowledge of the agreements is simply wrong. In paragraph 41 of the Amended Complaint, Plaintiff alleges that "[a]t all times relevant to the individual Defendants' conspiracy, [ ] Graham and Companion were aware of the existence of the terms of the individual Defendants' employment contracts with Plaintiff and consciously and knowingly encouraged the individual Defendants to breach their contracts."[40] Plaintiff also alleges that the Former Employee Defendants "were aware of the contractual relationship (*sic*) each other had with the Plaintiff."[41] The Court deems these allegations true for the purpose of this 12(b)(6) analysis. *Sutton*, 277 N.C. at 98, 176 S.E.2d at 163.

56.     Finally, Moving Defendants argue that Plaintiff has "failed to plead sufficient facts to overcome [ ] Defendants' defense of legitimate business interest."[42] The Court interprets this as an argument that Plaintiff failed to plead that Defendants acted without justification. In *Sec. Life Ins. Co. v. Hooks* the Supreme Court summarized the law regarding this issue as follows:

> A motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged. . . . "The privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant which is involved." In determining whether an actor's conduct is justified, consideration is given to the following: the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor and the contractual interests of the other party. If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified. If, however,

---

[40] Am. Compl. ¶ 41.
[41] *Id.* at ¶ 83.
[42] Companion's Br. Supp. Mot. to Dismiss pp. 15-16.

the defendant is acting for a legitimate business purpose, his actions are privileged. Numerous authorities have recognized that competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful.

322 N.C. at 220-221, 367 S.E.2d at 650 (citations omitted).

57.     Here, Plaintiff alleges that Graham and Companion knew about the terms of the Former Employee Defendants' employment contracts with Plaintiff and "consciously and knowingly encouraged the individual Defendants to breach their contracts,"[43] and did so "without justification" in a "malicious and blatant attempt to destroy the Plaintiff's business."[44] Although the distinction between seeking to destroy a competitor and a lawful competitive interest may be blurry, the Court believes Plaintiff's allegation of a specific plan or scheme to destroy Plaintiff's business goes beyond reasonable competitive behavior.  The Court must accept the Plaintiff allegations, and concludes that Moving Defendants' Motions to Dismiss Count VIII of the Amended Complaint should be DENIED.

### F.  Unfair and Deceptive Trade Practices.

58.     In Count IX, Plaintiff claims that Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act, G.S. § 75-1.1 et seq. (the "UDTPA").  Plaintiff alleges that the Former Employee "Defendants used their influence and close contact with the Plaintiff's customers to entice and persuade the Plaintiff's customers to terminate their business relationship with Plaint for the direct benefit of the [Former Employee] Defendants and Companion."[45]  Defendants contend that Plaintiff's claim should be dismissed because it "does not fit within the paradigm of business-versus-business cases under [the] UDTPA"

---

[43] Am. Compl. ¶ 41.
[44] *Id.* at ¶ 85.
[45] *Id.* at ¶ 89.

because Companion "was not engaged in commercial dealings with Plaintiff."[46] Defendants also argue that Plaintiff has not alleged that Plaintiff engaged in an unfair or deceptive act.[47]

59. G.S. § 75-1.1 provides that "[u]nfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, are declared unlawful." To succeed on a claim under G.S. § 75-1.1, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Capital Res., LLC v. Chelda, Inc.*, 223 N.C. App. 227, 239, 735 S.E.2d 203, 212 (2012). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Huff v. Autos Unlimited*, 124 N.C. App. 410, 413, 477 S.E.2d 86, 88 (1996). "A practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Id.* Whether a trade practice is unfair or deceptive depends upon the facts of each case and their impact on the parties. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Although its drafters included "in or affecting commerce" in G.S. § 75-1.1 to benefit consumers, North Carolina case law provides that "in or affecting commerce" extends to businesses-to-business affairs in the context of a tortious interference with contract claim. *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592, 403 S.E.2d 483, 492 (1991); *Kuykendall*, 322 N.C. at 665, 370 S.E.2d at 389.

60. Defendants' first contention, that the UDTPA does not extend to claims arising out of an employer interfering with its competitors' non-competition agreements, has been squarely rejected by our appellate courts. *Kuykendall*, 322 N.C. at 664, 370 S.E.2d at 389; *Roane-Barker v. Southeastern Hosp. Supply Corp.*, 99 N.C. App. 30, 41, 392 S.E.2d 663, 670

---

[46] Companion's Br. Supp. Mot. to Dismiss p. 18.
[47] *Id.* at p. 20.

(1990). Since Plaintiff has adequately alleged that Companion tortiously interfered with Plaintiff's customer relationships and with its former employees' restrictive covenants, Defendants' motion to dismiss on these grounds must be rejected. Additionally, Plaintiff's specific allegation that Companion Defendants secretly conspired with Mary Jacobs and Harris to solicit and entice Plaintiff's employees to work for, and bring their patients to, Companion Home Care in a "plan or scheme to destroy Plaintiff's business,"[48] supports an inference of unfair and deceptive behavior that offends public policy. Since the Amended Complaint, and its reference to Plaintiff's allegedly secret scheme to destroy Plaintiff's business, must be deemed true in determining a 12(b)(6) motion to dismiss, Defendants' Motions to Dismiss Count IX of the Amended Complaint should be DENIED.

### G. Misappropriation of Trade Secrets.

61.     Plaintiff alleges that Defendants misappropriated its trade secrets in violation of the North Carolina Trade Secrets Protection Act, G.S. § 66-152, by providing to Companion Defendants "information regarding the identity of the Plaintiff's customers as well as information regarding [the] contractual relationship[s] between the Plaintiff and these customers."[49] (Count X). "A 'trade secret' by definition means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that derives independent or potential value from not being generally known or readily ascertainable through independent development." *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 233, 752 S.E.2d 634, 649 (2013). "Misappropriation" is defined as the acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such a trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to

---

[48] Am. Compl. ¶¶ 33-36.
[49] *Id.* at ¶ 99.

disclose the trade secret. G.S. § 66-152(1). A *prima facie* case for misappropriation may be made by showing that the defendant (1) knew or should have known of the trade secret and (2) had a specific opportunity to acquire the trade secret for use or disclosure or has actually acquired, disclosed, or used the trade secret without express or implied consent of authority from the owner. *GE Betz*, 231 N.C. App. at 233, 752 S.E.2d at 649. The trade secret must be pleaded with particularity to enable a defendant to understand exactly what he is accused of misappropriating and to allow the Court to decide whether a misappropriation has occurred. *Id.* at 234, 752 S.E.2d at 649. Generally, information such as names or addresses of an employer's customers gained during the performance of an employee's duties is not a trade secret. *Kadis v. Britt*, 224 N.C. 154, 162, 29 S.E.2d 543, 548 (1944); *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, *33 (N.C. Super. Ct. 2015) ("Under North Carolina law, customer information maintained in the memory of a departing employee is not a trade secret.").

62.     The Court concludes that Plaintiff's allegations do not even remotely support a claim that the information regarding the names of customers that the former employees serviced and the nature of the "contractual relationships" Plaintiff had with the customers were trade secrets. The cases cited by Plaintiff in its brief involving compilations of customer data including information such as pricing, bidding formulas, and customer ordering histories are inapposite.[50] Accordingly, Moving Defendant's motion to dismiss Count X of the Amended Complaint should be GRANTED.

---

[50] Pl.'s Br. Opp. Mot. to Dismiss p. 22-23; *e.g., GE Betz*, 231 N.C. App. at 234, 752 S.E.2d at 649 ("chemical formulations, pricing information, customer proposals, historical costs, and individualized sales data"); *Sunbelt Rentals Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 55, 620 S.E.2d 222, 227 (2005) ("preferred customer pricing, employees' salaries, equipment rates, fleet mix information, budget information and structure of the business"); *South Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, *11 (N.C. Super. Ct. 2015) ("confidential customer information such as customer contact information and customer buying preferences and history . . . confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals,

## H. Breach of Fiduciary Duty.

63.     In Count XI of the Amended Complaint, Plaintiff alleges the Former Employee Defendants owed to Plaintiff, and breached, fiduciary duties by "engaging in conduct which was not in the best interest of the Plaintiff and was specifically designed, in bad faith, to damage Plaintiff and Plaintiff's business."[51]  Mary Jacobs, Shanita Harris, and Kourtney Jacobs have moved to dismiss the claims for breach of fiduciary duty on the grounds that they were mere employees of Plaintiff, and did not hold positions that created fiduciary obligations to Plaintiff.

64.     In order to establish a claim of breach of fiduciary duty, a plaintiff must show (1) the existence of a fiduciary duty, and (2) that the fiduciary failed to "act in good faith and with due regard to plaintiff's interests." *White v. Consolidated Planning Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004).  A fiduciary relationship arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Harrold v. Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (2002).  Such a fiduciary relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*" *Dalton v. Camp*, 353 N.C. 647, 652, 548 S.E.2d 704, 707-708 (2001) (emphasis in original) (internal citations omitted).  The standard for establishing a fiduciary relationship is demanding. "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance'

---

commission reports, and information concerning SFS's relationship with its vendors"); *Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC LEXIS 45, *8 (N.C. Super. Ct. 2013) ("(a) customer lists including names, contact persons, addresses and phone number of Koch's customers; (b) the ordering habits, history and needs of Koch's customers and (c) Koch's pricing and inventory management strategies").

[51] Am. Compl. ¶¶ 103-09.

of a fiduciary relationship has arisen." *Highland Paving Co. v. First Bank,* 227 N.C. App. 37, 42, 742 S.E.2d 287, 292 (2013) (quoting *Crumley & Associates, P.C. v. Charles Peed & Associates, P.A.,* 219 N.C. App. 615, 620-21, 730 S.E.2d 763, 767 (2012)). North Carolina courts have held a typical employer/employee relationship insufficient to establish a fiduciary duty. *Dalton v. Camp*, 353 N.C. at 652, 548 S.E.2d at 708. For a fiduciary duty to exist in the employer-employee relationship it is not enough that the employee was one in whom the employer placed confidence or who had a duty to act in good faith towards their employer. *Id.* "[S]uch circumstances, . . ., define the nature of virtually all employer-employee relationships." *Id.* Rather, the facts must show that the "employer … was somehow subjugated to the improper influences or domination of his employee." *Id.*

65. Plaintiff concedes that "[a]s a general rule, the typical employer/employee relationship is insufficient to establish a fiduciary relationship."[52] Nevertheless, Plaintiff contends that the Former Employee Defendants' "direct and constant contact" with Plaintiff's clients placed the former employees in a position of "domination and influence" over Plaintiff's customers and its business. While such customer contact demonstrates the Plaintiff placed a certain level of confidence in the Former Employee Defendants to act in good faith with regard to Plaintiff's interests, it does not place the former employees in a position of domination and control over Plaintiff. The Court concludes that the allegations in the Amended Complaint are not sufficient to place the relationships between Plaintiff and Mary Jacobs, Shanita Harris, or Kourtney Jacobs outside of the typical employee-employer relationship and do not support a claim that these three former employees owed a fiduciary duty to Plaintiff. Accordingly, Mary Jacobs', Shanita Harris', and Kourtney Jacobs' motions to dismiss Count XI of the Amended Complaint should be GRANTED.

---

[52] Pl.'s Br. Opp. Jacobs' and Harris' Mot. to Dismiss p. 4.

## I.  Conspiracy.

66.  Plaintiff alleges that Defendants engaged in a civil conspiracy by soliciting and organizing the mass resignations of the Former Employee Defendants as part of "a common plan and scheme" to inflict injury upon Plaintiff.[53]  (Count XII).  An action for civil conspiracy exists when "there is an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way, resulting in injury inflicted by one or more of the conspirators pursuant to a common scheme." *Daniel Boone Complex, Inc. v. Furst*, 43 N.C. App. 95, 103, 258 S.E.2d 379, 386 (1979), *disc. rev. denied*, 299 N.C. 120, 261 S.E.2d 923 (1980).  "It is well established that there is not a separate civil action for civil conspiracy in North Carolina," rather "civil conspiracy is premised on the underlying act." *Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333, (2011) (citations and quotation omitted).

67.  Defendants rely on *Bottom v. Bailey*, 2014 N.C. App. LEXIS 1348, 767 S.E.2d 883, 890 (2014), and argue that Plaintiff has made only conclusory allegations of a civil conspiracy amongst individual Defendants that are not sufficient to support the claim. *Bottom*, however, is readily distinguishable.  In *Bottom*, the court affirmed the dismissal of Plaintiff's conspiracy claim, holding that:

> The claim suggests that defendants . . . conspired, but fails to allege how this conspiracy came to be, or when, or where, or why. The complaint asserts mere conclusions concerning the elements of civil conspiracy, without offering a scintilla of factual allegation in support of the claim.

*Id.*

68.  Here, however, Plaintiff has made detailed allegations that the plan to orchestrate a mass exodus of Plaintiff's employees and their subsequent hiring by Companion was made between Mary Jacobs, Harris, and Companion in and around October, 2015, was

---

[53] Am. Compl. ¶ 111.

facilitated through clandestine contacts between Jacobs and Companion, and was for the purpose of taking Plaintiff's customers serviced by the Former Employees and destroying Plaintiff's business. While Plaintiff ultimately may not be able to prove these allegations, the Court must accept them as true as this time. Since the Court has not dismissed some of Plaintiff's claims that could form the basis for a civil conspiracy, it cannot dismiss the claim for conspiracy. *RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, \*55 (N.C. Super. Ct. 2016). Accordingly, Moving Defendant's motion to dismiss Count XII of the Amended Complaint should be DENIED.

THEREFORE, IT IS ORDERED that:

a. The Motions to Dismiss Counts I and II of the Amended Complaint for breach of contract claims is GRANTED.

b. The Motions to Dismiss Count III of the Amended Complaint for breach of contract claims is GRANTED in part and DENIED in part. The Motions to Dismiss Count III are DENIED as to the first sentence of the Non-solicitation Restriction. The second sentence of the Non-solicitation Restriction is not enforceable but can be struck from the covenant. Accordingly, the Motions to Dismiss Count III of the Amended Complaint is GRANTED with regard to the second sentence of the Non-solicitation Restriction.

c. The Motions to Dismiss Count IV of the Amended Complaint for breach of contract claims are DENIED.

d. The Motions to Dismiss Count V of the Amended Complaint for breach of contract are DENIED.

e. The Motions to Dismiss Count VI of the Amended Complaint for breach of contract are DENIED.

f. The Motions to Dismiss Count VII and VIII of the Amended Complaint for tortious interference with customer contracts are DENIED.

g. The Motions to Dismiss Count IX of the Amended Complaint for unfair and deceptive trade practices claim are DENIED.

h. The Motions to Dismiss Count X of the Amended Complaint for misappropriation of trade secrets claim are GRANTED.

i. The Motions to Dismiss Count XI of the Amended Complaint for breach of fiduciary duty claim are GRANTED.

j. The Motions to Dismiss Count XII of the Amended Complaint for civil conspiracy claim are DENIED.

This the 1st day of August, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases